AMY VAN SAUN (*Pro Hac Vice*)
GEORGE A. KIMBRELL (*Pro Hac Vice*)
Center for Food Safety
2009 NE Alberta St., Suite 207
Portland, Oregon 97211
T: (971) 271-7372
Emails:  avansaun@centerforfoodsafety.org
         gkimbrell@centerforfoodsafety.org

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| CENTER FOR ENVIRONMENTAL HEALTH et al., | Case No. 3:18-cv-01763-RS |
| *Plaintiffs,* | |
| v. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO USDA'S MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR** |
| TOM VILSACK et al., | |
| *Defendants.* | Date: March 3, 2022 |
| | Time: 1:30 p.m. |
| | Courtroom: 3, 17th Floor |
| | Hon. Richard Seeborg |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

STANDARD OF REVIEW ........................................................................................ 6

I.     THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR SUMMARY
JUDGEMENT ON ALL COUNTS BECAUSE THE WITHDRAWAL RULE
IS ARBITRARY AND CAPRICIOUS AND CONTRARY TO OFPA .................. 8

     A.     Summary Judgment on Plaintiffs' Statutory Interpretation Claim
(Claim I) is Warranted Because USDA Did Not Defend and
OFPA Unambiguously Grants USDA Authority to Issue Organic
Livestock Rule. ...................................................................... 8

     B.     Summary Judgment on Plaintiffs' Economic Rationale Claim
(Claim II) is Warranted Because USDA Also Declined to Defend
its "Market Failure" Requirement. ....................................... 12

     C.     Summary Judgment on Plaintiffs' NOSB Claim (Claim III) is
Warranted Because USDA Failed to Explain Why It Deviated
from Its Past Practice of Consulting its Expert Advisory Body
and Following Its Recommendations. .................................... 14

II.     THE COURT SHOULD VACATE THE WITHDRAWAL RULE .................... 19

     A.     Court Only Needs to Grant Summary Judgment on One Claim
to Vacate the Withdrawal Rule on the Merits. ...................... 20

     B.     While Warranted Here, A Merits Decision Is Not Required to
Vacate and the Court Should Vacate Even If It Remands to
USDA Without Reaching the Merits. ..................................... 23

     C.     USDA Has Failed to Carry Its Heavy Burden to Show that this
is a Rare Case where the Default Remedy of Vacatur is Not
Warranted ............................................................................... 28

          1.     USDA's Multiple Serious Legal Errors Weigh Heavily in
Favor of Vacatur ....................................................... 28

          2.     Disruptive Consequences ........................................... 31

     D.     Remand Without Vacatur Would Prejudice Plaintiffs. ......... 34

     E.     If The Court Does Not Vacate, In The Alternative It Should
Retain Jurisdiction And Impose A Deadline On Any Remand. ...... 36

III.     USDA'S WITHDRAWAL OF THE ORGANIC LIVESTOCK RULE BASED ON
A FLAWED COST-BENEFIT ANALYSES WAS ARBITRARY AND
CAPRICIOUS AND PLAINTIFFS ARE ENTITLED TO SUMMARY
JUDGMENT ON THIS ISSUE OF CLAIM II. .......................................... 38

     A.     Plaintiffs Need Not Amend Complaint Because USDA Took
No New Action in 2020 .......................................................... 39

     B.     Plaintiffs are Entitled to Summary Judgment on Claim II
Because USDA Relied On a Flawed Cost-Benefit Analysis for its
Withdrawal Rule. .................................................................... 41

          1.      USDA ignored benefits despite evidence in the record ......42

          2.      USDA relied on its RIA to issue the Withdrawal Rule but then retained it without a valid RIA. ............................43

CONCLUSION ..........................................................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. For the Wild Rockies v. Allen,*
  2009 WL 2015407 (D. Or. July 1, 2009) ...................................................... 37

*All. for Wild Rockies v. Marten,*
  2018 WL 2943251 (D. Mont. June 12, 2018) ....................................................24, 25

*All. for the Wild Rockies v. U.S. Forest Serv.,*
  907 F.3d 1105 (9th Cir. 2018) ....................................................28, 32

*American Ship Bldg. Co. v. N.L.R.B.,*
  380 U.S. 300 (U.S. 1965) ........................................................................ 7

*Amoco Prod. Co. v. Vill. of Gambell,*
  480 U.S. 531 (1987) ........................................................................ 29

*Birhanu v. Wilkinson,*
  990 F.3d 1242 (10th Cir. 2021) ........................................................ 17

*Cal. Communities Against Toxics v. EPA,*
  688 F.3d 989 (9th Cir. 2012) ........................................................ 24

*Center for Native Ecosystems v. Salazar,*
  795 F. Supp. 2d 1236 (D. Colo. 2011) ........................................................ 25

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council,*
  467 U.S. 837 (1984) ........................................................................ 11

*In re Clean Water Act Rulemaking,*
  No. 20-04636, 2021 WL 4924844 (N.D. Cal. Oct. 21, 2021) ...............................*passim*

*Coal.to Protect Puget Sound Habitat v. U.S. Army Corps. of Eng'rs,*
  417 F. Supp. 3d 1354 (W.D. Wash. 2019), *aff'd* 843 F. App'x 77 (9th Cir.
  2021) ........................................................................ 21

*Coal.to Protect Puget Sound Habitat v. U.S. Army Corps. of Eng'rs,*
  466 F.Supp.3d 1217 (W.D. Wash. 2020), *aff'd* 843 F. App'x 77 (9th Cir. 2021)......... 21, 31, 33

*Community Hosp. of Monterey Peninsula v. Thompson,*
  323 F.3d 782 (9th Cir. 2003) ........................................................ 7

**Page(s)**

**Cases**

*Confederated Tribes v. Salazar,*
    No. 11-284, 2012 WL 3757655 (D.D.C. Aug. 29, 2012)............................ 36, 37, 43

*Connecticut Nat'l Bank v. Germain,*
    503 U.S. 249 (1992)...........................................................................................11

*Consolidated Edison Co. of New York, Inc. v. F.E.R.C.,*
    823 F.2d 630 (D.C. Cir. 1987)..........................................................................22

*Ctr. for Food Safety v. Vilsack,*
    734 F. Supp. 2d 948 (N.D. Cal. 2010)..............................................................31

*F.C.C. v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009)............................................................................................7

*Fogo De Chao (Holdings) Inc. v. U.S. Dept. of Homeland Sec.,*
    769 F.3d 1127 (D.C. Cir. 2014).........................................................................22

*Humane Soc'y of U.S. v. Locke,*
    626 F.3d 1040 (9th Cir. 2010)..........................................................................28

*Idaho Farm Bureau Fed'n. v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995)............................................................................28

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.,*
    626 F.3d 84 (D.C. Cir. 2010)............................................................................18

*Kisor v. Wilkie,*
    139 S. Ct. 2400 (2019)....................................................................................7, 11

*Lands Council v. Powell,*
    395 F.3d 1019 (9th Cir. 2005)............................................................................7

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (U.S. 2010)..................................................................................33

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (U.S. 1983)...........................................................................6, 16, 19

*N. Coast Rivers All. v. Dep't of the Interior,*
    2016 WL 8673038 (E.D. Cal. Dec. 16, 2016)...................................................25

**Page(s)**

**Cases**

*Nat. Res. Def. Council v. Pritzker,*
 828 F.3d 1125 (9th Cir. 2016) ....................................................... 17

*Nat'l Fam. Farm Coal. v. EPA,*
 960 F.3d 1120 (9th Cir. 2020) .................................................. 21, 28

*Nat'l Fuel Gas Supply Corp. v. F.E.R.C.,*
 468 F.3d 831 (D.C. Cir. 2006) ....................................................... 22

*Navajo Nation v. Regan,*
 2021 WL 4430466 (D. N.M. Sept. 27, 2021) ............................ 26, 27

*Nilsson, Robbins et al v. Louisiana Hydrolec,*
 854 F.2d 1538 (9th Cir. 1988) ......................................................... 9

*Northern Plains Resource Council v. U.S. Army Corps of Eng'rs,*
 460 F. Supp. 3d 1030 (D. Mont. 2020) ......................................... 34

*Ocean Advocates v. U.S. Army Corps of Engineers,*
 402 F.3d 846 (9th Cir. 2005) ........................................................... 7

*Oregon Natural Desert Association v. Rose,*
 921 F.3d 1185 (9th Cir. 2019) ....................................................... 43

*Organic Trade Ass'n v. USDA,*
 370 F. Supp. 3d 98 (D.D.C. 2019) ........................................... 16, 28

*Organic Trade Ass'n v. USDA,*
 2020 WL 12118917 (D.D.C. 2020) ........................................... 41, 45

*Organic Trade Ass'n v. USDA,*
 No. 17-cv-01875 (D.D.C. Sept. 13, 2017) ..................................... 27

*Pacific Rivers Council v. Shepard,*
 2011 WL 7562961 (D. Or. Sept. 9, 2011) *report and recommendation adopted as*
 *modified,* 2012 WL 950032 (D. Or. Mar. 20, 2012) ......................... 9

*Pascua Yaqui Tribe v. EPA,*
 2021 WL 3855977 (D. Ariz. Aug. 30, 2021) ...................... 24, 26, 27, 31

*Pollinator Stewardship Council v. EPA,*
 806 F.3d 520 (9th Cir. 2015) ................................... 24, 26, 31, 32

Page(s)

**Cases**

*Pub. Employees Ret. Sys. v. Betts,*
    492 U.S. 158 (1989)..................................................................7

*S.E.C. v. Rose Fund, LLC,*
    No. C 03-04593 WHA, 2004 WL 6069175 (N.D. Cal. Sept. 17, 2004), *aff'd*
    156 F. App'x 3 (9th Cir. 2005).................................................9

*U.S. Army Corps of Eng'rs v. Northern Plains Resource Council,*
    141 S. Ct. 190 (2020)..............................................................34

*U.S. v. Windsor,*
    570 U.S. 744 (2013)................................................................11

*Utility Solid Waste Activities Grp. v. EPA,*
    901 F.3d 414 (D.C. Cir. 2018)................................................37

**Statutes**

5 U.S.C. § 706(2) ...........................................................................14, 21

7 U.S.C. § 6501...........................................................................7, 29, 32

7 U.S.C. § 6503.....................................................................................29

7 U.S.C. § 6509..............................................................................*passim*

7 U.S.C. § 6518...............................................................................15, 29

**Other Authorities**

National Organic Program (NOP); Organic Livestock and Poultry Practices: Final
    Rule,
    83 Fed. Reg. 10,775 (Mar. 13, 2018) ....................................15

National Organic Program (NOP); Final Decision on Organic Livestock and
    Poultry Practices Rule and Summary of Comments on the Economic Analysis
    Report,
    85 Fed. Reg. 57,937 (Sept. 17, 2020) ...................................11

Executive Order 13771 ..................................................................23

Page(s)

**Other Authorities**

USDA, Statement from Agriculture Secretary Tom Vilsack on Organic Livestock
  and Poultry Practices Final Rule (June 17, 2021),
  https://www.usda.gov/media/press-releases/2021/06/17/statement-
  agriculture-secretary-tom-vilsack-organic-livestock-and ................................................................... 34

# INTRODUCTION

In its response, Defendants (USDA) focus on what the present administration might do in the future, so it is important to back up and start with the big picture here. For over ten years, USDA worked with its expert advisory board, the National Organic Standards Board (NOSB) and organic stakeholders (including farmers, certifiers, and consumers) to draft the most important set of organic rules since 2010. Congress designed this process in the Organic Foods Production Act (OFPA) to ensure that organic livestock products abide by organic production standards uniformly and to preserve the integrity of the organic label. The 2017 Organic Livestock Rule was overwhelmingly supported by almost all organic stakeholders. When the Trump Administration took control, after hemming and hawing for nearly a year, and freezing the Rule, they eviscerated decades of organic law interpretation and process. The 2018 Withdrawal Rule was based the Trump Administration's arbitrary and capricious 180-degree flip in OFPA interpretation, gutting its own authority to set detailed standards for the care of livestock, and its erroneous economic conclusions. Plaintiffs challenged the rule immediately (as did the Organic Trade Association in a D.C. district court sister suit). After two years of litigation, including a motion to dismiss, and on the eve of completing the record and entering summary judgment briefing, USDA sought a mid-litigation remand to investigate self-purported flaws in its cost-benefit analysis, which USDA relied on as part of its basis for the Withdrawal decision. Plaintiffs did not oppose and provided expert economic analysis during USDA's notice and comment period, showing USDA the missing benefits and how it could fix its analysis. Yet in 2020, USDA determined that while that cost-benefit analysis was seriously flawed and must be withdrawn, it would take no action to fix the flaws that commenters, including Plaintiffs, raised with the agency and left the Withdrawal Rule in place. USDA also left its other rule rationales completely untouched: that USDA lacked authority

under OFPA to set standards for the care of organic livestock beyond those enumerated in the statute, and that there was no "market failure" justifying regulation. Finally, now that the administration has (again) changed, USDA tells the Court it will now "reconsider" those rationales, but defends its failure to consult with and follow the recommendations of its expert body NOSB and its decision to continue the Withdrawal Rule despite lacking a valid cost-benefit analysis.

In short, USDA has made a tangled mess of things worthy of an administrative law final exam on what *not* to do. And in its response to Plaintiffs' motion for summary judgment Defendants tie themselves up in further knots with Twister-like contortions, such as defending part of its rationale for withdrawing the overwhelmingly supported Organic Livestock Rule, while also seeking remand on other aspects, but without confessing error or supporting vacatur.

Despite all this, the Court has clear, uncomplicated solutions for finally resolving and bringing this nearly four years of litigation to a close. Indeed, the Court can rule in several ways that will provide all parties with a path forward and avoid further harms from the admittedly flawed Withdrawal Rule.

<u>First</u>, the Court can and should grant summary judgment for Plaintiffs on any or all their claims and vacate the Withdrawal decision. Most straightforwardly, the Court should grant summary judgment on the two claims that USDA affirmatively declined to defend. Plaintiffs moved for summary judgment on the statutory authority rationale (Claim I) and USDA's insertion of an extra-statutory "market failure" requirement for setting organic standards (Claim II). USDA does not dispute or defend against these claims. They involve pure legal questions of OFPA interpretation which can be resolved by the Court without further administrative process. The Court should also grant summary judgment for Plaintiffs on Claim III and hold that USDA's

Withdrawal Rule was arbitrary and capricious because it failed to consult with its expert advisory body (NOSB), despite having always done so in past livestock standard rulemakings, and failed to explain its extreme deviation from that body's recommendations. Summary judgment on *any* one of these Claims should result in vacatur of the unlawful Withdrawal decision under the Administrative Procedure Act (APA) because it means the Withdrawal decision was issued "contrary to law" and thus courts "shall set aside" or vacate the action; vacatur is the presumptive statutory remedy provided by the APA and USDA cannot carry its burden to show this is one of the rare cases where remand without vacatur is warranted.

It is telling that USDA refuses to defend its original rationales for Withdrawal at issue before this Court and instead gestures toward ambiguous and uncertain promised future actions. Essentially, for both Claim I and Claim II, Defendants are gambling everything on their Remand Without Vacatur motion succeeding. If the Court grants that motion, then it would not reach the summary judgment cross-motions. But if the Court does not grant that motion and reaches summary judgment, Defendants offer no resistance; they have no fallback, refuse to defend the unlawful Withdrawal Rule, and concede. Thus, the simplest course for the Court is to grant summary judgment on Claims I and II and vacate the Withdrawal Rule.

Second, while warranted here, the Court does not even have to reach the merits to vacate the unlawful Withdrawal Rule. If the Court prefers to simply address the agency's motion for remand and not the cross motions for summary judgment, *it can and still should vacate the Withdrawal Rule*. When an agency seeks voluntary remand of a rule, even without confessing error or a merits decision, courts in this circuit apply the normal vacatur test, considering the seriousness of the agency's errors and any disruptive consequences from vacatur. Here, both prongs of that test weigh heavily in favor of vacatur. USDA's serious errors went to the heart of

OFPA, eviscerating one of its core purposes: to assure the public that organic products uniformly follow the organic standards and ensure the integrity of the label that indicates humane animal treatment. And because USDA says it will reconsider the statutory authority and market failure rationales, there is little chance that USDA will rehabilitate and adopt the same Withdrawal Rule on remand. Given the extremely low chance that we will be going back to the Withdrawal Rule, USDA cannot carry its burden of showing why the Court should even consider any interim disruptive consequences of vacating the Withdrawal Rule, since the change is not interm. Nor will vacatur harm OFPA's purpose because the original Organic Livestock Rule promoted consistency and supported consumer trust in the label, as NOSB, the Office of Inspector General (OIG), and USDA itself confirmed. Here there is much more risk from leaving the unlawful action *in place* than from vacating it. And as in other recent vacatur of agency action cases discussed *infra* where the current administration has sought remand on Trump Administration decisions, the USDA here broke dramatically with longstanding prior precedent in a decision that was under attack from day one. Under these circumstances, there is no industry reliance on the challenged rule, and given the Rule's long history and codification of many existing practices, it is familiar to the industry. Thus, if the Court determines that remand is best, it should still vacate the Withdrawal Rule.

USDA's attempt to avoid judicial review of its Withdrawal Rule, despite already getting a mid-litigation stay to clarify its reasoning and supplement the record, should not be rewarded with an open-ended remand that leaves the harmful Withdrawal Rule intact. The record is complete, and the issues are ripe for adjudication. Further delay will prejudice Plaintiffs and their members, who have been waiting for years to see the fixes in the Organic Livestock Rule to ensure the integrity of the Organic label. Millions of organic animals raised and slaughtered each year

according to the organic standards do not have years to wait for USDA to redo the Organic

Livestock Rule that was already ten years in the making.

Third, although it is not required for Plaintiffs to prevail and this matter to be closed with

vacatur of the Withdrawal Rule, the Court should also grant Plaintiffs' summary judgment on the

cost-benefit analysis issue. In a new "gotcha" argument, USDA now claims that Plaintiffs have not

disputed this rationale for withdrawing the original rule because they have not amended their

complaint following the 2020 mid-litigation stay and USDA's decision to continue the

Withdrawal. But because USDA took *no new action* in 2020, Plaintiffs do not need to amend their

complaint and have already moved for summary judgment on Claim II (the economic rationale),

including the 2020 facts already in the record. USDA itself repeatedly emphasized that it was not

taking new action on the Withdrawal Rule, in part because it left untouched its statutory authority

and market failure rationales (the same rationales that USDA does not defend before this Court).

That said, and in an abundance of caution, if amendment is required, in the alternative Plaintiffs

move concurrently to file an amended complaint addressing the 2020 decision, which will not

prejudice USDA, is made in good faith, and is not futile. *See* Pls. Mot. for Leave to File Third

Amended Compl., *filed concurrently*. USDA's reasoning in that 2020 decision is even more flawed

because USDA relied on its cost-benefit analysis in the Withdrawal Regulatory Impact Analysis

(RIA) but then declared that analysis seriously flawed and withdrew it, but kept the Withdrawal

Rule. While Plaintiffs have argued that OFPA does not require any cost-benefit analysis outcome

for USDA to regulate, it is undisputed that where the agency *relies* on a cost-benefit analysis and

RIA, it must have valid analyses to support its rule. Because the Withdrawal Rule had no valid

regulatory impact or cost-benefit analyses, by USDA's own hand, the Withdrawal Rule

continuation in 2020 was arbitrary and capricious. Importantly, the same is not true of the original

Organic Livestock Rule because USDA did not rely on its RIA to support *that* rule; instead, USDA issued the Rule based on the need to provide details for outdoor access and spacing for poultry and many other improvements to the livestock care standards to ensure that products consistently meet uniform organic standards. Nor is that rule before this Court.

Simply, the Court should vacate the Withdrawal Rule. Whether it is based on a merits decision finding for Plaintiffs on all or any one of the summary judgment issues, providing USDA with guidance as to the legal issues, or on remand without a merits decision, the Withdrawal Rule must be set aside. USDA is free to start its new rulemaking process anytime it chooses, and free on remand to take any action it finds necessary to protect the organic market, so long as it conforms to the APA and OFPA. Organic farmers and organically raised animals deserve to have closure on the ill-conceived and unlawfully adopted Withdrawal Rule as soon as possible.

Finally, and in the alternative, if the Court nonetheless grants USDA's request for remand without vacatur and to retain jurisdiction, it should at a minimum not give USDA an indefinite remand to write a new rule that may return to this Court. Because USDA has not given any final rule timeline, and because the Organic Livestock Rule was already well-supported by years of administrative process, the Court should require USDA to complete its reconsideration within 60 days of its order and require USDA to send its final rule to be published in the Federal Register within 60 days of the publication of its proposed rule, with interim status reports.

## STANDARD OF REVIEW

APA review under the arbitrary and capricious standard is not as deferential as USDA makes it out to be. It still requires USDA to have articulated a rational connection between the facts before it and the decision it made. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 44 (U.S. 1983). It must be "searching and careful," and include whether USDA considered the relevant factors. *Center for Biological Diversity v.* Haaland, 998 F.3d

1061, 1067 (9th Cir. 2021). Here, those are the factors supplied in OFPA, which does not require any specific outcome of a cost-benefit analysis, but rather commands USDA to set additional standards for the care of organic livestock to fulfill its purposes, one of which is to assure consumers that organically produced products meet consistent standards. 7 U.S.C. §§ 6501, 6509. The Court "must not 'rubber-stamp' ... administrative decisions that [it] deem[s] inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 859 (9th Cir. 2005).

As to the statutory authority and "market failure" rationales, which USDA does not defend, the Court must also follow not only *Chevron*, but also *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009), where the agency must show that its new policy is permissible under statute and provide "good reasons" for the new policy. *See* Pls. MSJ at 8-9. The Supreme Court has held that an agency's interpretation of a regulation that conflicts with the plain language of the statute is entitled to "no deference." *Pub. Employees Ret. Sys. v. Betts*, 492 U.S. 158, 171 (1989). As the Ninth Circuit has confirmed, there is "no call for deference to the agency's legal interpretation" where "neither the scope nor the effect of the [law] is ambiguous." *Lands Council v. Powell*, 395 F.3d 1019, 1034 (9th Cir. 2005). *See also American Ship Bldg. Co. v. N.L.R.B.*, 380 U.S. 300, 318 (U.S. 1965) ("The deference owed to an [agency] cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.").

Even if there were "genuine ambiguity" in the language, the agency's reading must still be reasonable. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ("And let there be no mistake: That is a requirement an agency can fail.") (citing *City of Arlington v. F.C.C.*, 569 U.S. 290, 296 (2013)). And "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *Community Hosp. of Monterey Peninsula v. Thompson*, 323 F.3d 782, 792 (9th Cir. 2003) (citing *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 446 n. 30 (1987) (internal quotations omitted).

I.   **THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT ON ALL COUNTS BECAUSE THE WITHDRAWAL RULE IS ARBITRARY AND CAPRICIOUS AND CONTRARY TO OFPA.**

First, the Court can and should grant summary judgment for Plaintiffs on the straightforward legal issues that USDA does not defend: its statutory OFPA authority to enact the Organic Livestock Rule and its imposition of an extra-statutory requirement of a "market failure" (Claims I and II). Second, the Court should also grant Plaintiffs' summary judgment motion on Claim III: USDA's arbitrary and capricious failure to follow its past practice of consulting with NOSB for rulemaking and its failure to explain deviation from those expert recommendations.[1]

A.   **Summary Judgment on Plaintiffs' Statutory Interpretation Claim (Claim I) is Warranted Because USDA Did Not Defend and OFPA Unambiguously Grants USDA Authority to Issue Organic Livestock Rule.**

Should the Court agree with Plaintiffs that OPFA unambiguously grants USDA broad authority to set standards for the care of organically raised animals, it can and should grant summary judgment for Plaintiffs on Claim I. USDA's failure to mount any opposition to Plaintiffs' arguments alone entitles Plaintiffs to summary judgment. USDA's attempts to confuse the issue with its 2020 decision fall flat: that decision did not address, much less change, its original Withdrawal Rule statutory authority rationale that is the issue of Claim I.

OFPA unambiguously confers authority on USDA to set standards for the living conditions of organically raised livestock. *See* Pls. MSJ at 10-13. Critically, 7 U.S.C. § 6509(d)(2) commands NOSB to recommend standards specifically "for the care" of livestock, in addition to the enumerated provisions for livestock health care. And § 6509(g) directs USDA to develop

---

[1] While the Court does not have to reach this issue to grant summary judgment for Plaintiffs on Claim II, should the Court reach the cost-benefit analysis issue it should grant Plaintiffs' summary judgment. Because USDA changed this reasoning mid-litigation, and because USDA mainly relied on its "market failure" requirement and this was more tangential, Plaintiffs reserve discussion of that issue for the end of this reply. *Infra.*

1   detailed regulations after those recommendations and with public notice and comment. The plain

2   meaning of "care" and "health care" do not limit organic standards to merely administering drugs;

3   USDA's Withdrawal Rule interpretation of OFPA to the contrary violates several canons of

4   statutory construction. *See* Pls. MSJ at 11-13. OFPA's legislative history supports the conclusion

5   that Congress intended USDA to set regulations to ensure humane living conditions for organic

6   livestock. Pls. MSJ at 13. USDA's 180-degree reversal of this decades-long interpretation was

7   arbitrary and capricious, *id.* at 15, and nothing in USDA's summary judgment response changes

8   this conclusion.

9

10          <u>First</u>, USDA affirmatively decided *not to defend* at all its statutory interpretation rationale.

11   USDA admits in a footnote that it chose not to defend the prior Trump Administration USDA's

12   statutory interpretation because it intends to reconsider the statutory authority issue itself in the

13   future, but then still illogically claims that this admission is not a concession to Plaintiffs'

14   arguments. *See* USDA at 19, n.8.

15

16          USDA cannot have it both ways. When the summary judgment moving party meets its

17   initial burden of identifying a genuine absence of issues of material fact, the burden shifts to the

18   nonmoving party to show that summary judgment should not issue. *Nilsson, Robbins et al v.*

19   *Louisiana Hydrolec,* 854 F.2d 1538, 1545 (9th Cir. 1988) (failure to oppose summary judgment

20   motion is grounds for granting the motion); *S.E.C. v. Rose Fund, LLC,* No. C 03-04593 WHA,

21   2004 WL 6069175, at *4 (N.D. Cal. Sept. 17, 2004), *aff'd* 156 F. App'x 3 (9th Cir. 2005) (in the

22   absence of a showing by the nonmoving party, the moving party is entitled to judgment as a matter

23   of law). This includes cases where an agency does not defend a claim regarding an agency action.

24   *See e.g., Pacific Rivers Council v. Shepard,* 2011 WL 7562961 (D. Or. Sept. 9, 2011) *report and*

25

26   *recommendation adopted as modified,* 2012 WL 950032 (D. Or. Mar. 20, 2012) (agency did not

27

28

defend "no effect" determination under ESA on a plan for public land management and court granted partial summary judgment on that claim and vacated decision). USDA's failure to provide any facts or legal argument regarding the statutory interpretation rationale that is the issue of Claim I means that it has completely failed to meet its burden, and Plaintiffs are entitled to summary judgment on that Claim as a matter of law.

USDA's policy protestations that it does not want to "prejudice" the outcome of its proposed new rulemaking are legally irrelevant to whether this Court should grant Plaintiffs' summary judgment motion on Claim I based on USDA's failure to defend it. USDA at 19 n.8. There is no *agency* pre-judgment at issue here, but rather this *Court's judgment* as to the question of the scope of USDA's authority in 7 U.S.C. § 6509, which will settle the matter. This is a *legal* question, not one that requires any factfinding by the agency, so additional public input is not required. Even if it were, USDA has already received public comment on the statutory authority question *three* times (including proposed delay and withdrawal in 2017 and 2018 and the 2020 public comment period). Pls. MSJ at 6; OLPP_REMAND_29763; OLPP_REMAND_28430. It is highly unlikely that USDA will receive any new information on this topic. The current record is complete and there are no disputed issues of fact, so the claim is ripe for adjudication. Whatever USDA might determine in a future rulemaking is not before this Court, only what USDA determined in the Withdrawal Rule. They can either defend it or concede it was legal error. They cannot obfuscate and avoid any judicial review on vague claims of a new future position about which they give no guarantees. USDA's failure to defend Claim I should end the inquiry.

Second, USDA's one-sentence argument that the Court need not conduct a *Chevron* analysis to determine the legal question of its OFPA authority is nonsensical. USDA at 23. USDA claims that, based on its 2020 conclusion that its RIAs contained errors, the Court can "affirm the

status quo." *Id.* It is wholly unclear how this relates to Claim I. Nothing in the 2020 decision

changed USDA's original statutory authority rationale; rather it expressly left that rationale

untouched, stating itself that the "legal authority" issue was "beyond the scope" of what the agency

was reconsidering in 2020.[2]

More generally, the Court cannot grant USDA summary judgment on the statutory

authority question without employing the tools of statutory construction. It is the Court's job to

decide what the law is and to do so, a thorough analysis of the text and Congressional intent of a

statute is required before any deference to an agency interpretation. *U.S. v. Windsor*, 570 U.S. 744,

762 (2013) (it is judiciary's duty "to say what the law is.") (quoting *Marbury v. Madison*, 5 U.S. (1

Cranch) 137, 177 (1803)); *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43

(1984); *Kisor*, 139 S. Ct. at 2415 (a court discerns Congressional intent by reviewing the plain

language of the statute and using all the tools of statutory construction). In fact, courts should not

even consider an agency's interpretation when the text is plain. *Connecticut Nat'l Bank v. Germain*,

503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this first canon is

also the last: judicial inquiry is complete."). Thus, the Court cannot merely accept USDA's

interpretation of its statutory authority in its Withdrawal Rule without first ascertaining whether

---

[2] USDA requested that remand to review an economic report looking at newly discovered flaws in the cost-benefit analysis that USDA conducted for the Organic Livestock Rule and the Withdrawal Rule. ECF No. 111 at 6. It never intended to reconsider its statutory authority, and it said expressly that it was not doing so in response to comments. 85 Fed. Reg. 57942 ("limited purpose" of notice and comment was to assess the "methodological soundness of the OLPP Final RIA and Withdrawal RIA" and comments that did not relate to that purpose, such as those regarding USDA's "legal authority to promulgate the OLPP Rule," were "beyond the scope"). Indeed, USDA expressly retained its statutory authority rationale for Withdrawal in its 2020 Federal Register notice. *Id.* at 57943 (USDA makes "no changes to the conclusions set forth in the Withdrawal Rule that did not rely on the flawed RIAs and *leaves the remainder of the Withdrawal Rule intact*") (emphasis added).

OFPA is ambiguous by exhausting all tools of statutory construction, starting with the plain language.

The Court should not take USDA's invitation to skip this step because USDA's decision to retain its Withdrawal Rule due to flaws in both RIAs cannot support summary judgment *for USDA* on the unrelated *statutory authority* question. USDA cannot avoid judicial review on this legal question without carrying its burden of showing why summary judgment should not be granted to the Plaintiffs, and it failed to mount any defense at all. Because USDA had the authority to adopt the provisions of the Organic Livestock Rule, Pls. MSJ at 9-14, the Withdrawal Rule was arbitrary and capricious and contrary to OFPA. This Court should grant summary judgment for Plaintiffs on Claim I and vacate the Withdrawal Rule.

**B.      Summary Judgment on Plaintiffs' Economic Rationale Claim (Claim II) is Warranted Because USDA Also Declined to Defend its "Market Failure" Requirement.**

For the same reasons that Plaintiffs should prevail on Claim I, the Court should also grant summary judgment for Plaintiffs on the economic rationale (Claim II), because USDA affirmatively chose not to defend its imposition of a "market failure" requirement in the Withdrawal Rule or its arbitrary conclusion that there was no market failure in the organic industry necessitating the Organic Livestock Rule.

USDA's second rationale for withdrawing the Organic Livestock Rule was economic, based in major part on USDA's extra-statutory imposition of a "market failure" requirement. OLPP_141341 (USDA "did not identify a market failure in the OLPP final rule RIA and therefore [USDA] has now concluded that regulation is unwarranted."). Despite this requirement being entirely absent from OFPA, USDA relied on a supposed lack of "market failure" to conclude that

the Organic Livestock Rule was not justified, *i.e.*, because the organic market is not failing, USDA should not issue more detailed regulations for organic livestock production. *See* Pls. MSJ at 17-18.

However, this "market failure" pre-requisite was arbitrarily plucked from an Executive Order, which cannot override Congress' command, *id.* at 18, and USDA further ignored robust evidence of a market failure in the record: an uneven playing field where some poultry producers fail to provide real outdoor access but still benefit from the USDA organic label. *Id.* at 18-19. Indeed, correcting this failure of the organic standards to be sufficiently detailed was one of the main purposes of the Organic Livestock Rule. *Id.* at 3-4, 18-19.

As with Claim I, USDA again does not defend its Withdrawal Rule "market failure" requirement as to the legal question, nor does it dispute that the robust record evidence showed a market failure, assuming arguendo one was required. Instead—for the first time to this Court or anywhere else publicly—USDA claims in its summary judgment response that it will be reconsidering the "market failure question." USDA at 19. USDA does not defend its rationale, offering no opposition to Plaintiffs' motion on this point. Instead, as with Claim I, because it may reconsider the issue, USDA asserts that the Court should also not reach it.

However, as a matter of law, if defendants affirmatively decide not to defend a claim for which plaintiffs have moved for summary judgment, plaintiffs are entitled to summary judgment on it. *Supra*. So, for the same reasons outlined above, the Court can and should grant summary judgment for Plaintiffs on this question of law and undisputed fact. Again, USDA seeks to avoid judicial review on this question but has failed to submit any defense of its actions.

USDA argues that it withdrew its prior conclusions about economics in 2020, USDA at 23-24, but just like with the statutory authority rationale, USDA's new economic report and no-action decision expressly left untouched the "market failure" requirement.

OLPP_REMAND_30242. Namely, in the 2020 final federal register notice, USDA repeated that regardless of the cost-benefit analysis, the lack of a market failure necessitated withdrawal. *Id.* USDA in fact *relied* on this unchanged reasoning to explain why it would not conduct a new cost-benefit analysis, despite the mistakes it and commenters found. *Id.* (no "market failure that makes intervention in the market necessary and thus warrants the use of limited agency resources to complete a new RIA."). So regardless of the outcome of its cost-benefit analyses, USDA was always going to withdraw the Organic Livestock Rule (and maintain that withdrawal in 2020) based on this purported lack of a "market failure." OLPP_141341 ("given the…lack of market failure…even if the comparison of costs and benefits was a close call, AMS would choose not to regulate as a policy matter.").  USDA's failure to defend this rationale that supplied such a major basis for the Withdrawal Rule entitles Plaintiffs to summary judgment on Claim II.

USDA relied on this alleged lack of "market failure" and its professed lack of statutory authority to support the Withdrawal Rule, and the Court can and should grant summary judgment for Plaintiffs on these two questions of law and undisputed fact. The Court should vacate the Withdrawal Rule on this basis. *See infra.*

### C.   Summary Judgment on Plaintiffs' NOSB Claim (Claim III) is Warranted Because USDA Failed to Explain Why It Deviated from Its Past Practice of Consulting its Expert Advisory Body and Following Its Recommendations.

Plaintiffs are also entitled to summary judgment on Claim III because USDA failed to seek and follow the advice of its experts and did not offer a satisfactory explanation of *why*. *See* Pls. MSJ at 26-28. For this reason alone, the Withdrawal Rule should be vacated.

As an initial matter, this Court held in response to USDA's motion to dismiss the consultation claim that "plaintiffs' assertion that USDA has consistently based its rulemaking decisions on NOSB recommendations, and has never before engaged in rulemaking without

consultation with NOSB, could support a challenge to the Withdrawal Rule under arbitrary and capricious review. *See* 5 U.S.C. § 706(2)(A)." ECF 34 at 13. Thus, contrary to USDA's erroneous argument, this is very much *not* the same claim that was dismissed (alleging USDA was required as a mandatory procedural duty to consult with NOSB under OFPA before issuing the Withdrawal Rule). USDA at 28. Rather, it is a quintessential arbitrary and capricious APA claim: USDA's Withdrawal Rule was unlawful because USDA failed to consult with NOSB despite always consulting NOSB before setting livestock care regulations, and failed to explain why it was deviating from NOSB's expert recommendations, especially when it has consistently adopted organic rules based on whether NOSB has weighed in. *See* Pls. MSJ at 7, 11.

NOSB is the Congressionally created expert body that is specifically mandated to research and recommend additional organic standards for the care of livestock. 7 U.S.C. §§ 6518(a), 6509(d)(2); Pls. MSJ at 26. The Organic Livestock Rule was the most significant set of organic standards since the 2010 Access to Pasture Rule and it was based on a decade of NOSB work and recommendations, which USDA expressly relied on to adopt the provisions of the Organic Livestock Rule. Pls. MSJ at 26-27. Indeed, USDA has always consulted with NOSB when adopting livestock rules, which makes sense given the provisions of 7 U.S.C. § 6509. *Id.* at 7, 11. When USDA suddenly reserved course in 2018, it failed to consult with NOSB after doing so for decades prior and failed to explain why it was so drastically deviating from its experts' recommendations. *Id.* at 27-28.

Despite concurrently moving for remand, unlike with Claim I and II, USDA does affirmatively defend the Withdrawal Rule on Claim III. However, in its defense, USDA points only to a single short statement, in response to comments, that it is not *required* to consult with NOSB and that it would be impractical to consult on every action USDA takes. USDA at 31,

citing Withdrawal Rule, 83 Fed. Reg. 10775, 10,778 & n.6. Of course, this Court has already settled that OFPA does not strictly require USDA to consult with NOSB before issuing livestock regulations. ECF No. 34 at 13. But that is not an explanation of why USDA was suddenly departing from decades of consulting with NOSB regarding updates to the organic standards for livestock care. While USDA may not be required to consult with NOSB on "every action it takes," this was not just any action: it was the "most important organic rule" promulgated since 2010. *Organic Trade Ass'n v. USDA*, 370 F. Supp. 3d 98, 115 (D.D.C. 2019); Pls. MSJ at 26. And NOSB stated to USDA and the public after the Organic Livestock Rule was issued and prior to USDA's withdrawal, that NOSB stood "ready" to consult with USDA on this important rule that took a decade to complete. OLPP_1733-35; Pls. MSJ at 27. Any excuse that it was impractical for USDA to consult with NOSB on this major livestock rule thus fails as arbitrary and capricious and contrary to the record evidence. *State Farm*, 463 U.S. at 43.

USDA tries to negate the premise that it has a practice of consulting with NOSB before making organic rules for livestock, but its reasoning is unavailing. First, USDA argues that it sometimes takes actions without consulting NOSB, but it cites only a single example. USDA at 28-29. If this is the only example USDA can produce in its 31 years of implementing the National Organic Program, then it is the exception that proves the rule and the pattern and practice of consulting NOSB before making rules is even more plainly established. Second, USDA downplays the fact that it has always relied on NOSB recommendations for livestock by pointing out that there have only been a few major *livestock* rules and many other rules for the entire organic program. USDA at 29 & n. 13. However, USDA offers no good reason why the inquiry should *not* be livestock standards, USDA at 29 n.13, given that Congress specifically mandated NOSB to give USDA recommendations on the care of livestock. 7 U.S.C. § 6509(d)(2); OLPP_26. Finally,

USDA's strawman argument that it never said it can *only* make rules based on NOSB recommendations also works against USDA: its string cite of quotes shows a clear pattern of consultation with NOSB, adoption of standards based on their recommendations, and USDA *withholding* standards for livestock where there are no NOSB recommendations yet. USDA at 29-30. The Court should ignore these red herrings, as the salient point is undisputed: in all the other livestock rulemakings—except the latest Withdrawal Rule—USDA has consulted with and relied on the expert recommendations of NOSB. USDA's failure to do so before issuing the challenged rule is arbitrary and capricious. *See Birhanu v. Wilkinson*, 990 F.3d 1242, 1259 (10th Cir. 2021) ("An unexplained deviation from past practice can render an agency's decision arbitrary and capricious. . .") (citing *WildEarth Guardians v. EPA*, 770 F.3d 919, 941 (10th Cir. 2014) (quoting *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (U.S. 2005))).

USDA offers similarly little in defense of its failure to explain why it deviated from NOSB's recommendations for updating the livestock care standards to ensure both humane treatment and consistent application (particularly of the outdoor access requirement). USDA at 32-33. USDA claims that under the APA it is not required "to discuss every item of fact or opinion included in the submissions made to it." USDA at 32-33 (citing *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993)). That may apply to public comments, but it is quite an extraordinary understatement to call the recommendations of the *statutorily created expert advisory body* just any "item of fact or opinion." It is the *most important* item according to Congress. Indeed, courts have regularly found agency decisions arbitrary and capricious for failing to consider and explain deviation from expert opinions. *See* Pls. MSJ at 27 (listing cases). USDA has no response to these cases finding agency action arbitrary and capricious for its failure to explain why it deviated from the input of bodies far less important than the NOSB. *See Nat. Res. Def. Council v. Pritzker*, 828

F.3d 1125, 1139 (9th Cir. 2016) ("An agency conclusion that is in direct conflict with the conclusion of its own experts . . . is arbitrary and capricious.").

USDA admits that it is required to explain why its decision did not run contrary to the record before USDA, at 34 n.14, but cannot show the Court how it achieved this in its Withdrawal Rule. USDA claims that the NOSB "recommendations were subsumed by and incorporated into USDA's own policy conclusions in the [Organic Livestock] Rule itself" and USDA "necessarily" addressed its deviation when it relied on its statutory authority and market failure rationales. USDA at 33. But those rationales did not at all mention NOSB, let alone explain to the public why USDA was suddenly rejecting all NOSB's expert recommendations, which NOSB continued to press in April 2017 after USDA initially delayed the Organic Livestock Rule. Pls. MSJ at 7, 26-27. It is important to remember that USDA's Withdrawal decision was not a snap one, rather it took over a year. During that time, NOSB spoke up again, just in case USDA had forgotten the past 10 years of recommendations. OLPP_1733. And yet USDA *still* just silently ignored its expert body's position and recommendations. Just like its failure to consult with NOSB after decades of doing so or to give a satisfactory explanation as to why, USDA's purported answer as to why it ignored NOSB's past recommendations is arbitrary and capricious.

USDA's other arguments attempting to avoid summary judgment on this claim also fail. USDA's attempt to distinguish its past practice of consulting with NOSB as merely "procedure" and not policy is similarly unavailing. USDA at 31. The issue is whether USDA adequately explained its deviation from its past practice of consulting with and relying on NOSB recommendations for livestock organic standards. It does not matter whether this past practice was "procedure" or "policy." USDA does not address *Int'l Union, United Mine Workers of Am. v. Mine*

*Safety & Health Admin.*, 626 F.3d 84, 93 (D.C. Cir. 2010), which held that the agency should have explained its deviation from its expert body in promulgating mining regulation.

USDA's Withdrawal Rule is arbitrary and capricious because USDA dispensed—without explanation—with decades of USDA practice of consulting with and following NOSB recommendations for the care of livestock. It further failed to explain in its Withdrawal Rule rationales why it was suddenly ignoring the expert recommendations that formed the Organic Livestock Rule. Its opposition points merely to (1) one paragraph explaining that USDA is not required by OFPA to consult with NOSB and then (2) to its entire explanation of its two rationales, where NOSB is not mentioned at all. This does not come close to withstanding searching and careful judicial review of USDA's duty under the APA. *State Farm*, 463 U.S. at 43 (question is whether the agency "articulate[d] a satisfactory explanation for its action"). Because the Withdrawal Rule was arbitrary and capricious on this basis, the Court should grant summary judgment to Plaintiffs and vacate the Rule.

## II.    THE COURT SHOULD VACATE THE WITHDRAWAL RULE

The Court should vacate the Withdrawal Rule whether the Court grants summary judgment on any of Plaintiffs' claims or the Court decides to remand to USDA without a merits decision. If Plaintiffs prevail on any Claim, the APA commands that the Court set aside the unlawful action. Particularly here, where USDA's Withdrawal Rule rested heavily and pervasively on its 180-degree reversal of statutory interpretation as to its authority, if that interpretation is contrary to OPFA—as it is—then the entire Withdrawal Rule must fall.

Further, as recent cases in this Court and the Ninth Circuit show, a merits decision is not even required to vacate a rule that an agency seeks to take back on remand. In those instances, the normal vacatur test applies, and here USDA has not met its high burden of showing that this is

one of those rare cases in which remand without vacatur is warranted. As to the first vacatur factor, the seriousness of USDA's violations of law, USDA's violations go to the heart of OFPA, including its erroneous gutting of its own authority to set farm standards for the care of organic livestock, and its insertion of an extra-statutory "market failure" pre-requisite to setting organic standards. These novel interpretations cut to the quick of OFPA and will do precedential harm to the Organic Program if left standing. And as to the second factor, the disruptive consequences of vacatur, USDA revoked the Organic Livestock Rule after a decade of its creation and in the face of support from 99% of the organic industry and the public. USDA has already indicated it will not adopt the same Withdrawal Rule again, meaning that there will be no return to this status quo to disrupt. To the contrary, remand without vacatur will harm the very purpose of OFPA: to assure consumers that organically produced products meet consistent standards. Remand without vacatur will, for example, allow producers of organic eggs and chicken to continue labeling those products with the USDA Organic seal but without providing meaningful outdoor access to their birds. In contrast, some farms do provide high levels of welfare that organic consumers expect. OLPP_132135-9. This lack of consistency is diametrically opposed to OFPA's purpose. Accordingly, the Court should vacate the Withdrawal Rule on any or all these grounds.

### A. Court Only Needs to Grant Summary Judgment on One Claim to Vacate the Withdrawal Rule on the Merits.

USDA has stressed that its two rationales for the Withdrawal Rule (statutory authority and economics) were independent, and therefore Plaintiffs must win on both claims to prevail and/or for the Court to grant vacatur. *E.g.*, USDA at 27-28. This is incorrect. If this Court finds that either *one* of those rationales was arbitrary and capricious, or rules for Plaintiffs on Claim III regarding NOSB, the Withdrawal Rule cannot stand. USDA focuses solely on the supposedly

independent rationales for Withdrawal but fails to address Claim III; however, as with the other

claims, if the Court grants summary judgment on that claim this alone requires vacatur.[3]

First, the rule USDA suggests, but provides no Ninth Circuit support for, would fly in the

face of normal judicial review of agency actions, where courts vacate agency actions if they find

they are unlawful on *one* of multiple grounds, granting summary judgment on only some of

plaintiffs' claims. *See e.g.*, *Nat'l Fam. Farm Coal. v. EPA*, 960 F.3d 1120, 1125 (9th Cir. 2020)

(vacating the EPA's pesticide registration decision based on holding under FIFRA, and not

reaching the question whether the registration decision also violates the ESA); *Coal.to Protect Puget

Sound Habitat v. U.S. Army Corps. of Eng'rs*, 417 F. Supp. 3d 1354, 1359 n.5 (W.D. Wash. 2019),

466 F.Supp.3d 1217 (W.D. Wash. 2020) (vacating Nationwide Permit for commercial shellfish

aquaculture based on Clean Water Act and NEPA violations, but not ruling on "alternative

theories for why [the permit] should be invalidated" under NEPA and ESA), *aff'd by Coalition to

Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 843 F. App'x 77 (9th Cir. 2021).

The text of the APA also supports this conclusion. Section 706 does not instruct courts to

vacate an agency action *only if* it is contrary to "all laws at issue" or in "all ways at issue," but rather

to vacate an action that is simply "contrary to law" in *any way*, including being "arbitrary and

capricious," "an abuse of discretion," "in excess of statutory jurisdiction" or "short of statutory

right," as well as "without observance of procedure required by law." 5 U.S.C. § 706(2). Any of

these ways means the courts "shall hold unlawful and set aside" the action. *Id.* Further, as a

practical matter, if plaintiffs had to prevail on every single "independent rationale" an agency

might name, it would provide agencies with means to avoid vacatur entirely, as they could name a

---

[3] Indeed, the fact that Courts, when faced with a motion for voluntary remand can nonetheless vacate *without granting summary judgment* on *any* grounds as discussed *infra* also belies Defendants' "Plaintiffs-must-win-summary-judgment-on-all-claims-to-get-vacatur" argument.

1   dozen different "independent rationales" for action. The argument has no stopping point and

2   proves too much. Such a blockade to judicial review is not workable or appropriate where the

3   courts are there to ensure that agencies act within the authority given to them by Congress.

4       Second, USDA has no precedent in this Circuit for its "must prevail on all claims"

5   argument and there is none that Plaintiffs can find. But even the extra-circuit precedent it cites

6   does not support it here: USDA fails to provide the entire rule from the single case it cites, *Fogo De*

7   *Chao (Holdings) Inc. v. U.S. Dept. of Homeland Sec.*, 769 F.3d 1127 (D.C. Cir. 2014). USDA at 28.

8   USDA failed to quote the part of *Fogo De Chao* where the court states: "Where the agency has *not*

9   *afforded individual weight to the alternative grounds*, however, the court may uphold the decision only

10   'as long as one [ground] is valid and the agency would *clearly* have acted on that ground even if the

11   other were unavailable.'" *Id.* at 1149 (citing *Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 939

12   (D.C. Cir. 2011) (internal citations and quotation marks omitted)) (emphasis added). Moreover,

13   the D.C. Circuit has held that where at least *one* of an agency's rationales is deficient, the action

14   should be vacated unless it is *certain* that the agency would have adopted its action even absent the

15   flawed rationale. *Nat'l Fuel Gas Supply Corp. v. F.E.R.C.*, 468 F.3d 831, 839 (D.C. Cir. 2006)

16   (vacating FERC orders despite being based on two justifications, after finding record did not

17   support one); *see also Consolidated Edison Co. of New York, Inc. v. F.E.R.C.*, 823 F.2d 630, 641-42

18   (D.C. Cir. 1987) (reversing and remanding FERC policy where the "bad" reason was major, "not

19   some minor misstatement of law or fact that can be passed over as an unfortunate lapse" but rather

20   a reason that "reflects a pervasive frame of mind" of the agency about a "crucial problem" in the

21   regulated industry).

22       This is *not* the test in the Ninth Circuit (nor does it seem consistent with the APA's plain

23   language or the basic two-prong vacatur test applying it). And even if it were, USDA provided no

weight to its supposedly independent rationales of 1) lack of statutory authority, 2) lack of market

failure, and 3) lack of valid cost-benefit analysis for OLPP. At least two of these arbitrary rationales

(statutory authority and lack of market failure) were clearly major and reflected USDA's and the

Trump Administration's frame of mind as to regulation in general: that it is per se a negative thing

to be avoided at all costs.[4] And crucially here, USDA has already *disclaimed* these two rationales

(statutory authority and market failure) and seeks remand on these issues. While the remainder of

the economic rationale (cost-benefit analysis) was certainly *part* of the rationale for Withdrawal, it

is far from entirely certain that USDA would choose to issue the Withdrawal Rule for this reason

alone. OLPP_141341 (stating there is "high degree of uncertainty and subjectivity in evaluating the

benefits" and costs of the Organic Livestock Rule and that USDA mainly based withdrawal on

other rationales). USDA said the same thing in its 2020 decision, that regardless of the cost-benefit

analysis, it was not going to reinstate the Organic Livestock Rule based on its statutory authority

and market failure rationales. *Supra*. Therefore, if the Court agrees with Plaintiffs even as to one of

their claims, including Claim III regarding NOSB, this is sufficient to vacate the Withdrawal Rule.

> **B.    While Warranted Here, A Merits Decision Is Not Required to Vacate and the Court Should Vacate Even If It Remands to USDA Without Reaching the Merits.**

The Court need not reach the merits of Plaintiffs' claims to vacate, it can instead do so

with USDA's request for voluntary remand of the Withdrawal Rule. When considering vacatur of

agency actions prior to a conclusive decision on the merits, the normal vacatur test applies. *In re*

*Clean Water Act Rulemaking*, No. 20-04636, 2021 WL 4924844, at *5 (N.D. Cal. Oct. 21, 2021)

---

[4] OLPP_141339 (citing "general USDA regulatory policy" as basis of statutory authority change); OLPP_141341-2 (need market failure to regulate and citing "potential for additional regulation to distort the market or drive away consumers" and stating "[a]s a matter of USDA regulatory policy, AMS should not regulate simply because there is consensus in the industry); OLPP_141343 (finding withdrawal is a deregulatory action under Trump "2-for-1" executive order, EO 13771).

(Ninth Circuit applies test for vacatur adopted from *Allied Signal* to erroneous agency action and finding the same factors are applicable when considering voluntary remand prior to a conclusive decision on the merits); *Pascua Yaqui Tribe v. EPA*, 2021 WL 3855977, at *4 (D. Ariz. Aug. 30, 2021) (similar holding, applying Ninth Circuit vacatur test and finding all factors weighed in favor of vacating the Navigable Waters Protection Rule).[5] The Ninth Circuit vacatur test instructs the court to consider (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)" and (2) "the disruptive consequences of an interim change that may itself be changed." *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). Application of this test is crucial because when an agency requests voluntary remand prior to the court reaching the merits of a challenged action, it is asking to side-step judicial review. *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *4 ("Leaving an agency action in place while the agency reconsiders may deny the [plaintiffs] the opportunity to vindicate their claims in federal court and would leave them subject to a rule they have asserted is invalid.").

Contrary to USDA's footnote argument citing no Ninth Circuit authority, a merits decision is *not* required for this Court to vacate the Withdrawal Rule. USDA at 19 n.7. Rather, several district courts within the Ninth Circuit, including this one, "have consistently acknowledged they have the authority to vacate actions upon remand prior to a final determination of that action's legality." *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *4 (noting that *Allied-Signal* test adopted by the Ninth Circuit itself was based on the standard for preliminary injunction); *Pascua Yaqui Tribe*, 2021 WL 3855977, at *4 (similar); *All. for Wild Rockies*

---

[5] *See also Cal. Communities Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (EPA sought voluntary remand on final rule and in granting request, court applied normal vacatur test, not vacating only due to lack of serious legal violations and significant environmental harm that would have come from vacatur).

*v. Marten*, 2018 WL 2943251, at *2-3 (D. Mont. June 12, 2018) (vacating where error was

significant, even though error was not attributable to the defendants); *N. Coast Rivers All. v. Dep't of*

*the Interior*, 2016 WL 8673038, at *6 (E.D. Cal. Dec. 16, 2016) (applying "the same equitable

analysis used to decide whether to vacate agency action after a ruling on the merits."); *see also*

*Center for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241-42 (D. Colo. 2011) ("[V]acation

of an agency action without an express determination on the merits is well within the bounds of

traditional equity jurisdiction.").

For example, in the recent case challenging a Trump-era Clean Water Act rule, Judge Alsup

applied the two-prong vacatur test to determine whether vacatur was appropriate prior to a merits

decision where EPA sought voluntary remand. *In Re Clean Water Act Rulemaking*, 2021 WL

4924844, *7-11. There, although EPA did not admit error—just like USDA here—the substantive

issues in the rule and the "scope of potential revisions EPA is considering" supported vacatur of

the rule, *id.* at *8—just like here. Regarding the disruptive consequences of vacatur, the Court

found that thirteen months of the rule being in place was "insufficient time for institutional

reliance to build up around the current rule, which has been under attack since before day one,"

and therefore that vacatur would not "intrude on any justifiable reliance." *Id.* In fact, the Court

noted that the "whipsawing" defendants ascribed to vacatur "clearly arose from EPA's

promulgation of a revised [rule] that dramatically broke with fifty years of precedent, and

subsequent complete course reversal by the agency less than nine months later." *Id.* at *9. Again,

the parallels are plain: an agency dramatically breaking with longstanding prior precedent with a

decision that is under attack from literally day one that has not been in place long enough to

engender justifiable reliance interests.

Similarly, in *Pascua Yaqui Tribe*, the Arizona district court applied the same test and found EPA's errors in enacting the challenged rules contrary to established science and their own experts were serious, and that "regulatory uncertainty" was not sufficient disruptive consequence to support remand without vacatur. 2021 WL 3855977, at *4-5. As here, the intervenor-defendants argued that vacatur was inappropriate absent a merits decision but cited no Ninth Circuit precedent. To the contrary, the court cited several Ninth Circuit and district court cases where the ordinary vacatur test was applied to a voluntary remand. *Id.* at *4 (citing string of cases). As to the seriousness prong, the court found that the concerns identified by plaintiffs (and acknowledged by the agency) were "not mere procedural errors or problems that could be remedied through further explanation," but rather "involve[d] fundamental, substantive flaws that [cannot] be cured without revising or replacing" the rule. *Id.* at *5 (not a case where the agency could adopt the same rule on remand and a return to pre-2015 rules already familiar to the industry would not be disruptive) (citing *Pollinator Stewardship Council*, 806 F.3d. at 532).

Finally, a New Mexico district court also came to the same conclusion on the Navajo Nation's challenge to the Trump Administration repeal of the Clean Water Act WOTUS rule. *Navajo Nation v. Regan*, 2021 WL 4430466 (D. N.M. Sept. 27, 2021). The court found that the same vacatur test applies regardless of a merits decision and that agencies' errors (for which it sought voluntary remand) were serious, *id.* at *3 (citing *Pascua Yaqui Tribe*, 2021 WL 3855977, at *5) and that vacatur would not set back achievement of the goals of the statute, nor would the agencies issue the same rule again. While the agencies there also disputed vacatur and claimed it would interfere with their new rulemaking, the court found they could not explain "why vacating a rule that they themselves profess to be in need of revision would 'interfere' with their rulemaking process." *Id.* at *4. Nor did they–like USDA here–provide "any authority to suggest that such

interference rises to the level of disruptive consequences that would tip the balance against

vacatur." *Id.* The court warned that if that level of speculation were enough to prevent vacatur,

courts would *never* be able to vacate with a voluntary remand motion where an agency merely

indicates its intent to engage in a "new rulemaking." *Id.*

The exact same is true here. As detailed further below, USDA's Withdrawal Rule was

promulgated in serious error, both in the statutory interpretation severely limiting USDA's

authority and the fluting of expert recommendations by NOSB, the vast majority of the industry,

and record evidence supporting the Organic Livestock Rule. As in *Pascua Yaqui Tribe,* these are not

"mere procedural errors" and cannot be explained away on remand; rather the USDA's errors in

adopting the Withdrawal Rule were fundamental and can only cured by replacing that rule

entirely. The Withdrawal Rule breaks from a history of industry and NOSB support for organic

animal welfare standards—any "disruption" USDA alleges flows from the *Withdrawal Rule*, not

from vacatur. USDA at 36. Indeed, many of the Organic Livestock Rule's provisions are already

followed by most organic livestock producers. *See e.g.*, OLPP_35 (USDA expected mammalian

health care and living conditions sections, transportation, and slaughter provisions would codify

existing practices); OLPP_SUPP_140 (smaller egg producers already satisfy indoor and outdoor

space requirements in Rule). Nor can any certified organic operation claim surprise at the

requirements of the Organic Livestock Rule, as it was a *decade-long* rulemaking involving many

rounds of public process. Additionally, like in *In Re Clean Water Act Rulemaking,* 2021 WL

4924844, at *5, the Withdrawal Rule here was challenged from day one, not only by Plaintiffs after

it was finalized, but also by the largest organic industry trade group, OTA, *before* the rule was even

finalized. ECF No. 1; Complaint, *Organic Trade Ass'n v. USDA,* No. 17-cv-01875, ECF No. 1

(D.D.C. Sept. 13, 2017). Here, like *Pascua Yaqui Tribe,* the pre-Withdrawal Rule regime is familiar

1   to the regulated industry. Accordingly, even without a merits decision, the application of the

2   vacatur test here requires vacatur of the Withdrawal Rule. *See* Pls. MSJ at 28-30; *infra*.

3   **C.    USDA Has Failed to Carry Its Heavy Burden to Show that this is a Rare Case
            where the Default Remedy of Vacatur is Not Warranted.**

4

5   Contrary to USDA's brief, which makes vacatur sound like a generic balancing of the

6   equities question, USDA at 34, in the vacatur analysis it is *USDA* that has the burden to show why

7   anything less than vacating the unlawful agency action is the proper remedy. Pls. MSJ at 28-29

8   (describing the vacatur test standards); *All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105,

9

10  1121-22 (9th Cir. 2018). It is only appropriate in "rare" cases, *Humane Soc'y of U.S. v. Locke*, 626

11  F.3d 1040, 1053 n.7 (9th Cir. 2010), namely when "equity demands" a departure from the

12  presumptive remedy of vacatur. *Idaho Farm Bureau Fed'n. v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir.

13  1995). To analyze whether these "rare" circumstances are present, courts "weigh the seriousness of

14  the agency's errors against the disruptive consequences of an interim change that may itself be

15

16  changed." *Nat'l Fam. Farm Coal.*, 960 F.3d at 1144. Here, USDA failed to carry its heavy burden to

17  prove that equity demands the rare exception to the default remedy.

18  **1.    USDA's Multiple Serious Legal Errors Weigh Heavily in Favor of Vacatur**

19
    As explained above, USDA's legal errors in adopting the Withdrawal Rule were

20  fundamental, going to the heart of OFPA. *Supra; see* Pls. MSJ at 29-30. USDA did not defend these

21  errors as to the statutory authority rationale (Claim I) or the market failure requirement (Claim II).

22

23  USDA mainly defends by claiming that its 2020 determination—that the Organic Livestock Rule is

24  not in the "public interest"—and its decision to leave the Withdrawal Rule in place was not serious

25  error. USDA at 35. USDA also claims that these errors are undisputed and unidentified and

26  therefore not sufficiently serious for vacatur. *Id.* USDA could not be more wrong on all counts.

27

28

USDA's errors are serious because they go to the heart of the underlying statute's purposes. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542-43 (1987). OFPA's core purposes include creating and protecting a consistent organic market with products that uniformly follow the organic standards, and to ensure the integrity of the label that indicates humane animal treatment. 7 U.S.C. § 6501; MSJ at 15. First, USDA's new interpretation of its OFPA authority is an existential threat to the organic standard for all animal product labeling, which will become meaningless if purchasers cannot be sure whether a given operation provides decent welfare or is really a factory farm in disguise. OLPP_141341 (stating that while other livestock standards could not be repealed, USDA may do so in the future); OLPP_126889; OLPP_127171; OLPP_REMAND_28445-6 (organic consumers expect animal welfare from the organic seal and lack of consistency will erode consumer confidence in program, beyond poultry industry). Second, NOSB has a critical role in the creation of the organic program, including over ten years working on the Organic Livestock Rule, yet in the Withdrawal decision USDA intentionally disregarded its expert body despite past practice. 7 U.S.C. §§ 6518(a), 6503(a) (Congress created NOSB to assist in development of organic standards and USDA shall consult with NOSB in establishing its organic certification program); Pls. MSJ at 26; *see e.g.*, Declaration of Michael Sligh, ECF No. 27-17 ¶¶ 4-10 (describing experience as NOSB member and "practice and common understanding" "that OFPA required collaboration between [USDA] and the NOSB on every policy question that might ultimately lead to rulemaking.").

Third, in the Withdrawal Rule USDA inserted a requirement for a "market failure" that did not come from OFPA; rather it was plucked from an executive order regarding regulatory impact, which cited "market failure" as just *one* example of a reason to regulate. Pls. MSJ at 17-19. USDA's imposition of this extra-statutory factor could fundamentally change how/when USDA

1  will issue organic regulations and poses a serious threat to the entire Organic program, which is

2  meant to be based on environmentally beneficial and healthy processes, not purely economic

3  considerations.[6] *See e.g.,* OLPP_126890; OLPP_7697; OLPP_5646; OLPP_4430; OLPP_4439;

4  OLPP_REMAND_25723. And <u>finally</u>, the same is true of USDA's reliance on a cost-benefit

5  analysis in its RIA as a reason not to set organic standards, after finding that costs to some

6  producers to come into compliance would outweigh benefits, while ignoring many qualitative and

7  quantifiable benefits. *Infra*; Pls. MSJ at 19-26. USDA's error in revoking the Organic Livestock

8  Rule because of some mathematical errors in an EO-based regulatory impact analysis flies in the

9  teeth of the purpose of OFPA to ensure integrity of the label. Because of the Withdrawal Rule, the

10  problems identified by OIG, NOSB, and USDA itself regarding the uneven playing field and

11  inconsistent organic livestock products will continue, endangering the integrity of and consumer

12  confidence in the label.

13

14      Ignoring the errors USDA seeks to take back on remand, USDA claims that because of the

15  "undisputed errors" in its RIA for the Organic Livestock Rule, any errors it made in the

16  Withdrawal Rule are not serious. USDA at 35. Contrary to USDA's argument, Plaintiffs have

17  plainly disputed *all* of USDA's many errors, including its 2020 continuation of the Withdrawal

18  Rule based on a fatally flawed RIA. *See* Pls. MSJ at 19-26, *supra*. It is unclear how USDA missed (or

19  simply ignored) an entire section of Plaintiffs' motion, which dealt *specifically* with USDA's

20  economic rationale and why it was arbitrary and capricious to revoke the Organic Livestock Rule

21  based on mathematical errors in a cost-benefit analysis in an RIA. Pls. MSJ at 19-26.

22

23

24

25

26  ───────────────────

[6] Not to mention USDA's arbitrary conclusion that there was no market failure here, contrary to
27  the substantial record evidence that the Organic Livestock Rule actually did correct several
economic problems with organic livestock production, including the "porches" loophole for
28  poultry outdoor access. Pls MSJ at 18-19.

Additionally, and regardless of the 2020 decision, Plaintiffs have identified the errors which USDA's Withdrawal Rule left untouched by its 2020 decision, including that its statutory authority rationale and requirement of a "market failure" are arbitrary and capricious and contrary to OFPA. Pls. MSJ at 9-19; *supra* at 11 & n.2. That USDA does not dispute these errors on summary judgment and does not defend its rationales (while at the same time refusing to confess error for the purposes of remand and vacatur) does not make them any less serious: just the opposite. Rather, as described in Plaintiffs' opening brief, these are serious errors that ignore OFPA's plain language and the agency's own view for decades. Pls. MSJ at 29. USDA makes no effort to meet its burden of showing that these undefended errors are not serious.

Finally, USDA tries to make this test about the original Organic Livestock Rule and whether it was supported. USDA at 35. But that is not the inquiry. The Organic Livestock Rule is not at issue in this case. And whatever the prior agency action, the action currently before the Court—the Withdrawal Rule—can have and does have its own independent errors. This prong of the vacatur test does not ask whether the *status quo ante* is better or worse than the challenged action, but rather whether the agency's errors are serious in light of the statute's purpose. Here, as in the recent *In re Clean Water Act Rulemaking* and *Pascua Yaqui Tribe* cases, they undisputedly are.

### 2.    Disruptive Consequences

<u>First</u>, USDA did not address the fact that disruptive consequences only deserve weight if USDA may rehabilitate its rationale or adopt the same exact rule on remand. Pls. MSJ at 30; *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 952 (N.D. Cal. 2010); *Pollinator Stewardship*, 806 F.3d at 532 (inquiry is whether the "same rule would be adopted on remand"). *See also Coal. to Protect Puget Sound Habitat*, 466 F. Supp. 3d at 1223–24 (W.D. Wash. 2020) *aff'd*, 843 F. App'x 77 (9th Cir. 2021) (explaining that "the Court has significant doubts regarding the agency's ability to

reissue a nationwide permit governing commercial shellfish aquaculture in any form, *much less in the same form* as was found invalid in October.") (emphasis added). In its brief USDA submits that it will reconsider the statutory authority and "market failure" rationales, USDA at 14-15, so it is highly unlikely that USDA will adopt the same Withdrawal Rule on remand. The whole point of the disruptive consequences prong is to consider whether an agency on remand might restate the status quo later, and as such the change will be only "interim." That just will not be the case here. As such, USDA has not carried its burden (and cannot) of showing why the Court should even consider the disruptive consequences of vacating the Withdrawal Rule.

Second, the Court should focus any consequences inquiry on the type of disruptive consequences that go to the statute's purpose (just as the seriousness inquiry of the first vacatur prong goes is determined by the type of statute in question and its purposes). In environmental cases, the inquiry is whether vacatur will cause harm to the environment because those statutes' purpose is environmental protection. *Pollinator Stewardship*, 806 F.3d at 532; *All. for the Wild Rockies*, 907 F.3d at 1122 (vacatur "appropriate when leaving in place an agency action risks more environmental harm than vacating it"). Here, a core OFPA purpose is to "assure consumers that organically produced products meet consistent standards." 7 U.S.C. § 6501. Vacating the Withdrawal Rule does not risk causing the kind of consequences that would harm this OFPA purpose, but rather would *promote* consistency and level the playing field. Just as in *Pollinator Stewardship* and *Alliance for the Wild Rockies*, "leaving in place [the Withdrawal Rule] risks more [harm to OFPA's purpose] than vacating it." *Pollinator Stewardship*, 806 F.3d at 532; *All. for the Wild Rockies*, 907 F.3d at 1122. USDA provided no facts to dispute this conclusion. Rather, USDA itself (and OIG, NOSB, and the organic community) recognized that some egg producers were

exploiting a lack of detail in the outdoor access standards for poultry and therefore selling

"organic" eggs that were not consistent in their provision of outdoor access. *See* Pls. MSJ at 4-6.

USDA's only evidence of disruptive consequences is that some operators will have to come

into compliance and may not be able to do so immediately to meet the implementation deadlines

in the original Rule. USDA at 36. Not only does USDA cite its own disavowed RIA for this

"evidence," it fails to mention that most of the provisions of the Organic Livestock Rule are

followed already, OLPP_132131, and even in the case of egg and chicken meat producers, many

already comply with the outdoor access and spacing requirements or could adapt. OLPP_67-72.

Further, USDA is free to take any action it wishes post-vacatur to mitigate disruptions, in

compliance with OFPA and the APA. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 164

(U.S. 2010) (explaining that, after vacatur, it is up to the agency what further action it will take).

USDA has not offered any evidence to meet its burden to prove disruptive consequences

that go to the purpose of OFPA nor that vacatur would harm the organic market overall. That

some producers currently enjoying the organic label premiums would have come into compliance

does not mean that it would harm the overall organic market; rather, the record shows that there

would be immediate benefit to producers already in compliance and a lucrative market for new

entries or returning producers. OLPP_REMAND_28443-44; OLPP_REMAND_25121;

OLPP_REMAND_25272; OLPP_151-2.

Finally, the Court can mitigate economic disruption to the extent it needs to, by partially

staying vacatur to give entities some time to comply (although USDA is free to do this on its own,

which it knows how to do given that it delayed implementation of the Organic Livestock Rule

several times in 2017 before ultimately withdrawing it in 2018). Courts can partially stay vacatur to

balance equities. *Coal. to Protect Puget Sound Habitat*, 466 F. Supp. 3d at 1226-7 (W.D. Wash.

2020), *aff'd* 843 F. App'x 77 (9th Cir. 2021) (partially staying vacatur of Nationwide Permit 48 to allow harvest of existing shellfish and one season of planting); *Northern Plains Resource Council v. U.S. Army Corps of Eng'rs*, 460 F. Supp. 3d 1030, 1040-41 (D. Mont. 2020) (partial vacatur appropriate where plaintiffs mainly concerned with Keystone XL pipeline and not routine maintenance also authorized under general permit), *U.S. Army Corps of Eng'rs v. Northern Plains Resource Council*, 141 S. Ct. 190 (Mem) (2020) (denying stay of vacatur pending appeal as to Keystone XL pipeline). Should the Court partially stay vacatur to allow regulated entities time to come into compliance, Plaintiffs suggest six months for egg and broiler chicken producers to implement the Organic Livestock Rule provisions.

### D.     Remand Without Vacatur Would Prejudice Plaintiffs.

Plaintiffs oppose USDA's request for remand without vacatur. There is no requirement that Plaintiffs show prejudice for the Court to apply the default remedy of vacatur, as it is not part of the vacatur test. That said, remand without vacatur—a remedy granted only in rare circumstances—will prejudice Plaintiffs by allowing the Withdrawal Rule to function in the unknown amount of time between remand and if/when USDA *finalizes and implements* a replacement rule. USDA gives no concrete timeline for this process, only noting in Secretary Vilsack's June 2021 statement that it "anticipate[s] sending the proposed rule to OMB [Office of Management and Budget] within six to nine months *from the date of the remand*."[7] This does not include extensive additional time before any new rule is active, such as: delay during OMB's review and the release of a proposed rule; extensions of comment periods; withdrawal and reconsideration of a proposed rule; and staggered implementation dates of a final rule—all of

---

[7] USDA, Statement from Agriculture Secretary Tom Vilsack on Organic Livestock and Poultry Practices Final Rule (June 17, 2021), https://www.usda.gov/media/press-releases/2021/06/17/statement-agriculture-secretary-tom-vilsack-organic-livestock-and.

which are common in agency rulemaking. USDA's proposal here would have the challenged

action—subject of this nearly 4-year litigation—to remain in the meantime, indefinitely causing

harm to Plaintiffs' members. Decl. of Holbein, ECF No. 149-1; Decl. of Walden, ECF No. 149-2.

Specifically, the failure to vacate means the continued exploitation of less-than-clear

standards for the outdoor access and space for egg-laying hens and meat chickens by operations

that profit from the USDA Organic label and price premium. *See e.g.*, OLPP_REMAND_25221;

ASPCA Amicus Br., ECF 150-1, at 16-7; ECF No. 149-1 ¶ 11. It means some eggs and chicken

labeled as "organic" can still come from birds that have nothing but a concrete porch for "outside"

access and a handful of companies will continue unfairly profiting from that. It means that people

who purchase organic food and pay that price premium will continue to not know whether the

organic seal actually meets their welfare expectations consistently, or whether their added expense

to buy organic is actually going to a factory farm in disguise; that means eroding trust in the

organic label. ECF 150-1 at 13-16; ECF No. 149 ¶ 8. It also means that organic farmers who have

invested in providing for the care of their livestock, including meaningful outdoor access, will

continue to suffer from this unlevel playing field, risk losing their markets, and must expend

additional time and expense to seek additional third-party certifications to show consumers that

they are providing good welfare. ECF 150-1 at 16-18; OLPP_132131; OLPP_REMAND_28444-45.

The flawed, illegitimate Withdrawal Rule has actively caused harm since it was issued in early

2018. *Id.*; ECF Nos. 149-1, 150-1.

Further, if the new rule is indeed the "same or similar to" policies in the OLPP Rule as

USDA contends (USDA at 36 n.15), it makes little sense for the vastly different Withdrawal Rule

to function in the interim. Additionally, USDA provides no evidence that Plaintiffs' victory would

truly be "short-lived," as it has not produced a concrete timeline at this point (nor given any

specifics as to what its new rule will establish, other than saying it will walk back some of the damage the Withdrawal Rule did). USDA at 18. Here, remand is not an efficient use of judicial resources when the Court has a complete record on which to hold unlawful and vacate the Withdrawal Rule. Reinstating the Organic Livestock Rule (status quo before the Withdrawal Rule) is the most expedient way to get organic producers back on track and avoid further harms from the Withdrawal Rule. But allowing USDA to craft a new rule from scratch on its own schedule continues the harms from the Withdrawal Rule indefinitely.

However, USDA does not need permission from the Court to undertake a new rulemaking and can embark on that process whenever it sees fit. *See e.g.*, *Confederated Tribes v. Salazar*, No. 11-284, 2012 WL 3757655, at *1 (D.D.C. Aug. 29, 2012) (denying voluntary remand, explaining that "[n]either a remand nor a stay . . . is necessary to enable the federal defendants to review and reconsider the determination."). The Court should see through USDA's request and reach the merits of this challenge to provide USDA with the guidance it needs to craft a legally sound rule in the future. Failing that, the Court should vacate with remand to avoid prejudice to Plaintiffs.

**E.** **If The Court Does Not Vacate, In The Alternative It Should Retain Jurisdiction And Impose A Deadline On Any Remand.**

Finally, the Court should deny USDA's request and vacate for all the reasons explained above, but if it does not vacate, at a minimum it should not grant the agency an open-ended, indefinite remand that may or may not return to this Court. Rather, applying remand, stay, or abeyance, the Court should require USDA to complete its reconsideration of the Withdrawal Rule within 60 days of its order, and require USDA to send its final rule to be published in the Federal Register within 60 days of the publication of its proposed rule, with interim status reports. While it will not commit to any timeline, USDA agrees the Court should retain jurisdiction pending a final rule. USDA at 19.

Courts may, and often do, retain jurisdiction during remand and impose deadlines for agency reconsideration. *See, e.g.*, *Utility Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (granting remand on claims where EPA submitted a timeline for reconsideration); *All. For the Wild Rockies v. Allen*, 2009 WL 2015407 (D. Or. July 1, 2009) (calling the motion for partial remand a "close call" and ordering defendants to submit a final rule on a schedule). Particularly given the many months this new Administration has been in office this Court should set a definite and short timeframe for any new rule.[8] Further, if USDA truly wishes to reconsider the Rule, in whole or in part, nothing stops it from so acting; the Court can simply instruct the agency to plow ahead with both litigation and reconsideration. *Confederated Tribes*, 2012 WL 3757655, at *1.

For all the reasons stated above, the Court should deny USDA's request for voluntary remand without vacatur and vacate the Withdrawal Rule. Even if the Court grants USDA's motion, it should still vacate the Withdrawal Rule as vacatur is the presumptive remedy and USDA has not met its burden to show this is one of those rare circumstances where the equities demand remand without vacatur. Finally, to preserve an alternative in the instance this Court grants USDA's motion and also declines to vacate, Plaintiffs request that the Court retain jurisdiction and require deadlines of 60 days from this Court's order for a new proposed rule, and another 60 days for a final rule by USDA.

---

[8] One reason that vacatur is superior to this route, however, is the continuing administrative duty this route places on the Court to oversee the case and require timely compliance by Defendants, rather than simply vacating and sending back to the agency to conduct whatever further proceedings it sees fit. With vacatur, USDA can take their time with whatever they intend to do and it will not continue to harm Plaintiffs because the Withdrawal Rule will be nullified.

### III. USDA'S WITHDRAWAL OF THE ORGANIC LIVESTOCK RULE BASED ON A FLAWED COST-BENEFIT ANALYSES WAS ARBITRARY AND CAPRICIOUS AND PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THIS ISSUE OF CLAIM II.

Although the Court need not reach this issue to rule for Plaintiffs and provide all the relief they seek, if the Court decides to reach it anyway, the Court should grant summary judgment for Plaintiffs on the cost-benefit economic rationale issue because USDA admitted it failed to consider many benefits of the Organic Livestock Rule and—despite relying on it—disclaimed its own Withdrawal Rule RIA. USDA's clarification of its reasoning for the Withdrawal Rule in 2020— that without a valid RIA the Organic Livestock Rule is "not in the public interest"—is nonsensical because it was the Withdrawal Rule, *not the Organic Livestock Rule*, that relied on a flawed RIA.

USDA attempts to avoid judicial review of one piece of its economic rationale (Claim II) by asserting that Plaintiffs had to amend their complaint to challenge the Withdrawal Rule after the agency's 2020 economic report. USDA at 24. USDA is wrong for three reasons. First, the Court simply does not need to address this part of the economic rationale at all to find the Withdrawal Rule was unlawful and violated the APA based on: the statutory interpretation rationale (Claim I); or the "market failure" requirement (separate flaw in Claim II); or the USDA's failure to consult with NOSB or explain its deviation from the expert recommendations (Claim III). Granting Plaintiffs summary judgment on any of those grounds is sufficient to vacate the Withdrawal Rule. *See supra*. Second, despite its "gotcha" argument, USDA never *took* any additional action in 2020 requiring amendment, as is made plain by its own words and actions. Third and finally, in an abundance of caution Plaintiffs concurrently file a motion for leave to amend, which will cause no prejudice to USDA as the Court can refer to the arguments Plaintiffs already made in their summary judgment motion, addressing both USDA's Withdrawal Rule explanation and its 2020 clarification. *See* Pls. Mot. for Leave to File Third Am. Compl., *filed concurrently*; Pls. MSJ at 19-26.

If the Court does reach this discrete issue, USDA's 2020 rationale for withdrawing the Organic Livestock Rule based on a faulty cost-benefit analysis is arbitrary and capricious for two straightforward reasons. First, USDA admitted it failed to consider several benefits from the Organic Livestock Rule and failed to correct them. Second, USDA expressly relied on its cost-benefit analysis in the Withdrawal RIA to support its Withdrawal Rule, but then disclaimed that RIA as fatally flawed. This is classic arbitrary and capricious rulemaking that is so divorced from the evidence before the agency that it merits no deference from this Court.

### A.   Plaintiffs Need Not Amend Complaint Because USDA Took No New Action in 2020.

Plaintiffs did not need to amend their complaint to prevail in their challenge to the Withdrawal Rule in Claim II because USDA took no new action in 2020. Its own description of its 2020 decision shows there *was* no new action requiring amendment, but merely a clarification of USDA's reasoning in continuing the Withdrawal Rule.

All the Court must do to so conclude is simply look at USDA's own language in its 2020 federal register notice for the new economic report. Its stated purpose for the 2020 notice and comment period was to clarify and supplement the record regarding the economic analyses for the Organic Livestock and Withdrawal Rules. OLPP_REMAND_30242. Its final decision was that "*no additional rulemaking action* with respect to the OLPP Rule *is necessary.*" *Id.* (emphasis added). USDA repeated in response to comments that it never intended to even *fix* the errors it found in the cost-benefit analysis, but "simply to identify them and discuss how they may have impacted the prior economic analysis." OLPP_REMAND_30238; OLPP_REMAND_30241 ("The limited purpose of this notice-and-comment proceeding was to assist AMS in forming a final assessment regarding the methodological soundness of the OLPP Final RIA and Withdrawal RIA and any policymaking conclusions that flow from that assessment."); OLPP_REMAND_30243 ("The purpose of the

remand was to clarify and supplement the record regarding the OLPP and Withdrawal Rules in light of new facts and information that came to USDA's attention in December 2019, and for AMS to make a decision on *whether* further rulemaking action or economic analysis is warranted in light of that new information.") (emphasis added). USDA determined it was not so "warranted," and as such did not take any "further rulemaking action" in 2020. Further, the agency was crystal clear that it was not interested in discussing any other policy implications. *Id.* ("This proceeding was not intended to fully reopen the legal and policy discussion regarding the OLPP Rule.").

In further support, the Court can look at USDA's summary judgment response: in denying that USDA should have actually *fixed* the flaws in its cost-benefit analysis if it was going to rely on one, USDA admits that it was "not, at that point, proposing to impose any new regulations; it was simply attempting to ascertain the impact of the errors in its prior economic analyses on the underpinnings of its existing policy." USDA at 25. USDA claims that it could not have fixed its flawed economic assessment because "USDA was not proposing to impose any new regulations but simply to maintain the status quo." USDA at 27. Again, USDA cannot have it both ways: either the 2020 remand changed the Withdrawal Rule, or it did not. It did not.

Further, it is no surprise that USDA took no new action on the Withdrawal Rule in 2020 regardless of the outcome of its new economic report because, as it stated, the statutory authority and market failure rationales were untouched. OLPP_REMAND_30242-43 (making "no other changes to the conclusions set forth in the Withdrawal Rule that did not rely on the flawed RIA"); USDA at 27 ("a new cost-benefit analysis would have made little sense in light of USDA's then-views of statutory authority"). Indeed, USDA only sought remand on the economic issue after OTA filed an expert declaration in its sister case, by the same economist who drafted the first economic analysis for USDA on the proposed Organic Livestock Rule. ECF No. 111;

OLPP_SUPP_135-159; *see also Organic Trade Ass'n v. USDA*, 2020 WL 12118917 (D.D.C. 2020) & ECF 151 at 5. USDA now seeks to use that same strategy to avoid judicial review and vacatur of the irreparably flawed Withdrawal Rule before this Court. This kind of "gotcha" argument is indicative of a lack of belief in the Trump-era rationale that USDA continues to defend.

In sum, because USDA "decided not to take[] any further regulatory actions or to make any policy changes with respect to the OLPP Rule," OLPP_REMAND_30243, there is simply no new agency action which would necessitate an amended complaint. This was all part of the same Withdrawal Rule action, and accordingly Plaintiffs are entitled to summary judgment on Claim II regarding USDA's economic rationale for all the reasons stated in Plaintiffs opening motion. *See* Pls. MSJ at 19-26 (addressing USDA's latest explanation of its economic rationale in the 2020 decision).

**B.      Plaintiffs are Entitled to Summary Judgment on Claim II Because USDA Relied On a Flawed Cost-Benefit Analysis for its Withdrawal Rule.**

Alternatively, should the Court decide that the 2020 decision was a new agency action and that to challenge it Plaintiffs need to amend their complaint, Plaintiffs have hereby provided an amended complaint, filed concurrently.  *See* Pls. Mot to File Third Amended Complaint. As explained in that motion, there is no prejudice to USDA from the filing; it is not futile or sought in bad faith. *Id.*

The Court should still grant summary judgment for Plaintiffs as to USDA's economic rationale for Withdrawal as articulated in the 2020 decision. As Plaintiffs have always argued, no cost-benefit analysis is *required* for USDA to set organic standards. OLPP_126890; Pls. MSJ at 17-18. But where an agency *relies* on a cost-benefit analysis for its decision, as USDA did here for the Withdrawal Rule, that analysis cannot be arbitrary and capricious. USDA at 24 n.9 (citing *Nat'l Ass'n of Home Builders v. E.P.A.*, 682 F.3d 1032, 1040 (D.C. Cir. 2012)). And here it was.

Specifically, USDA failed to consider several benefits from the Organic Livestock Rule, despite the evidence being before the agency. *See* Pls. MSJ at 21-24. And USDA itself admits that the cost-benefit analysis in its RIA supporting the Withdrawal Rule is fatally flawed, and it did not fix it. OLPP_REMAND_30243. This renders the Withdrawal Rule invalid. Contrary to USDA's arguments, the same is not true of the Organic Livestock Rule, because USDA did not rely on the cost-benefit analysis or RIA to justify the rule; rather, the agency relied on the need to add detail to the livestock standards to achieve one of the core purposes of OFPA, to provide consistent Organic products that meet consumer expectations.

### 1.    USDA ignored benefits despite evidence in the record

During the stay, Plaintiffs took USDA's invitation to weigh in further on the economics of the Organic Livestock Rule in 2020 and outlined several areas that USDA should fix to make its cost-benefit analysis valid. Indeed, Plaintiffs contracted an expert economist to provide this testimony to the agency on their behalf. OLPP_REMAND_28431-59.

In response, USDA refused Plaintiffs' invitation to correct the errors in its economic analysis, despite not contesting several of them. Pls. MSJ at 20-24. USDA's defense is nonsensical: USDA claims that it deserves deference on its technical analysis, but also that it adequately explained why it did not actually *do* that technical analysis. USDA's resulting reasoning in the 2020 decision is even thinner than its original Withdrawal Rule economic rationale, and Plaintiffs are entitled to summary judgment on Claim II based on USDA's arbitrary reliance on a botched economic analysis to invalidate the Organic Livestock Rule.

USDA does not dispute that it failed to address several of Plaintiffs' expert's comments as to economic impacts, and crucially, that it failed to account for *benefits* to the broiler chicken market from the original Organic Livestock Rule. *See* USDA at 26-27 & n.12. This is a major

oversight in a cost-benefit analysis that focuses solely on egg and chicken producers. For those issues USDA *did* address (such as consumer willingness to pay and post-Rule market growth), USDA claims deference to its technical expertise. USDA at 26. But, despite *acknowledging* those issues, USDA did not *fix* the problems: as it immediately goes on to admit, it chose not to redo its flawed cost-benefit analysis and in fact completely *withdrew* that piece of its rationale. USDA at 26. The Court cannot defer to a void. *Cf. Oregon Natural Desert Association v. Rose*, 921 F.3d 1185, 1191 (9th Cir. 2019) (while agency methodology is granted deference under NEPA, where the agency did not use *any* method or estimate, there is no deference).

If USDA indeed conducted a new rulemaking in 2020 based on the costs and benefits of the Organic Livestock Rule, it should have supported it with a *valid* cost-benefit analysis, rather than throw up its hands and fail to correct admitted errors which would have changed the outcome of the analysis. *See* Pls. MSJ at 24-26. USDA claims that it could not have conducted a new analysis in response to the comments *it invited* because it was not taking a new action (despite arguing now that complaint amendment is required), and it lacked time given the *OTA* court's remand. USDA at 27. But this excuse is thin and easy to see through: agencies can undertake action *at any time*, regardless of whether litigation is ongoing. *Confederated Tribes*, 2012 WL 3757655, at *1. It is the height of arbitrary and capricious rulemaking to admit the reasoning is flawed, not correct it, and continue the course of action.

### 2. USDA relied on its RIA to issue the Withdrawal Rule but then retained it without a valid RIA.

First, USDA claims that Plaintiffs do not dispute its 2020 "independent" rationale for continuing the Withdrawal Rule, but Plaintiffs emphatically do. Pls. Mot. Third Am. Compl. Exh. A ¶¶ 8, 110-117, 137; Pls. MSJ at 24-26. As explained directly above, it was arbitrary and

capricious, and USDA flatly refused to fix its flaws or even respond to some of Plaintiffs'

comments. The 2020 amended cost-benefit decision, if evaluated alone, is even more flawed than

the 2018 Withdrawal Rule: it is based on economics but lacks a valid cost-benefit analysis, having

retracted its own RIA.

Second, it does not matter that USDA claims yet another "independent" rationale; if this

Court finds for Plaintiffs on any of the Counts and holds that USDA was arbitrary and capricious

on *any* of its rationales, the APA commands the Court to set aside the unlawful action. *See supra.*

Third, as USDA itself admits, errors in an RIA do not require invalidation of an agency

action *unless* the agency relies on the analysis and the errors are serious. USDA at 24 n.9. But here,

USDA *did rely* on its RIA for its Withdrawal Rule. OLPP_141341 ("AMS maintains that the cost

of the OLPP final rule outweigh potential benefits"). Then USDA itself determined that the errors

in that analysis were so "serious" and "significant," that USDA would have to entirely redo it.

OLPP_REMAND_30242-43. Yet it did not. Instead, it has "withdrawn the Withdrawal RIA"

(USDA at 26) and allowed the Withdrawal Rule to stand with no valid cost-benefit analysis,

despite having relied on one originally. This alone should require summary judgment that

Withdrawal Rule was unsupported and is arbitrary and capricious.

Fourth, contrary to USDA's erroneous claim (USDA at 24), the same is not true for the

Organic Livestock Rule, where USDA did *not* rely on the RIA and instead articulated other

significant reasons for issuing these necessary standards, including to satisfy one of the core

purposes of OFPA and comply with OIG recommendations. OLPP_257 (Rule needed to "create[]

greater consistency in organic livestock and poultry practice standards" based on recommendations

from the OIG and NOSB, and to "better ensure consistent compliance by certified organic

operations" to meet one of OFPA's purposes). Thus, the original rule was not *based* on the

USDA's conclusion that benefits would outweigh costs, although USDA rightly found they would.[9] OLPP_297-8.

Finally, whether the Court considers the 2020 decision as simply part of the same Withdrawal action, or reviews only USDA's rationales as articulated in its 2020 decision and grants Plaintiffs' motion to amend their complaint, Plaintiffs are entitled to summary judgment under the APA because USDA ignored commenters and did not fix its cost-benefit analysis, relying instead on a fatally flawed cost-benefit analysis to revoke much-needed organic standards.

## CONCLUSION

For all the above reasons, the Court should deny USDA's motion to remand without vacatur, and instead grant summary judgment for Plaintiffs on all counts and vacate the unlawful Withdrawal Rule. The Court can easily grant summary judgment on Claims I and II as USDA fails to even defend its statutory authority or "market failure" rationales for the Withdrawal Rule. The Court should also grant summary judgment on the NOSB consultation Claim (III) because USDA's response fails to carry its burden under the APA. Even if the Court prefers to remand to USDA for further rulemaking, it should put an end to this "administrative process at its never-ending worst" by vacating the Withdrawal Rule in the meantime. *Organic Trade Ass'n v. USDA*, 2020 WL 12118917, at *1 (D.D.C., 2020). Vacatur is the presumptive remedy with or without a merits decision, and USDA here completely failed to carry its burden to show that this is one of those rare cases where remand without vacatur is warranted.

Respectfully submitted this 15th day of December, 2021.

/s/ *Amy van Saun*
AMY VAN SAUN (*Pro Hac Vice*)
GEORGE A. KIMBRELL (*Pro Hac Vice*)
Center for Food Safety

---

[9] Plaintiffs agree with this conclusion, despite its original cost-benefit analysis failing to account for some benefits. OLPP_REMAND_28429.

2009 NE Alberta St., Suite 207
Portland, Oregon 97211
T: (971) 271-7372
Emails: avansaun@centerforfoodsafety.org
gkimbrell@centerforfoodsafety.org

*Counsel for Plaintiffs*