UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR ENVIRONMENTAL HEALTH, et al.,

Plaintiffs,

v.

THOMAS VILSACK, et al.,

Defendants.

Case No. 18-cv-01763-RS

**ORDER GRANTING MOTION TO REMAND AND DENYING MOTIONS FOR SUMMARY JUDGMENT AS MOOT**

## I. INTRODUCTION

Plaintiffs, seven nonprofit organizations, challenge the U.S. Department of Agriculture's ("USDA") withdrawal of the Organic Livestock and Poultry Practices ("OLPP") Rule. Plaintiffs move for summary judgment, averring withdrawal of the OLPP Rule violated the Organic Foods Production Act ("OFPA") and was arbitrary and capricious, contravening the Administrative Procedure Act ("APA"). Defendants (the USDA and its administrators, collectively, "the USDA") move for voluntary remand, or alternatively for summary judgment.

The OLPP Rule specified higher standards for the care of organic livestock. The Trump administration withdrew the rule (the "Withdrawal Rule"), arguing it exceeded the authority granted by OFPA, among other issues. However, the Trump administration then recognized there were errors in the economic analysis used to justify both the OLPP Rule and the Withdrawal Rule. Now, the Biden administration plans to issue a rule that is substantially similar to the OLPP rule. Yet it agrees the economic analysis was mistaken, so it does not wish simply to withdraw the Withdrawal Rule. An additional reason to start anew is because striking the Withdrawal Rule

1    would force the OLPP Rule to take immediate effect. Many regulated entities would instantly go

2    out of compliance, without the lead time the OLPP Rule envisioned. Thus, the USDA plans to

3    redo the rulemaking.

4          Plaintiffs do not provide sufficient reason to deviate from the general rule that voluntary

5    remand should be granted unless there is bad faith or frivolity. Their desired remedy would foist a

6    flawed rule on the market, resulting in much of the same prejudice they seek to avoid:

7    undermining public trust in the organic program. Plaintiffs also request vacatur of the Withdrawal

8    Rule, but the law is unsettled on whether vacatur can be granted without reaching the merits. Even

9    if vacatur were permissible, it is not advisable here, for the same reasons discussed above: the

10   remedy would be just as bad as the status quo in many ways, with the added disadvantage of

11   administrative chaos and waste. For the reasons further stated below, the USDA's motion for

12   voluntary remand is granted without vacatur, and the summary judgment motions are denied as

13   moot.

**II. BACKGROUND**

**A. The OLPP Rule**

16         In 1990, Congress passed the Organic Foods Production Act, 7 U.S.C. § 6501 *et seq.* The

17   purposes of the OFPA were: "(1) to establish national standards governing the marketing of

18   certain agricultural products as organically produced products; (2) to assure consumers that

19   organically produced products meet a consistent standard; and (3) to facilitate interstate commerce

20   in fresh and processed food that is organically produced." 7 U.S.C. § 6501. The OFPA directs the

21   Secretary of the USDA to "establish an organic certification program for producers and handlers

22   of agricultural products that have been produced using organic methods . . . ." § 6503(a). The

23   OFPA's guidelines regarding the "health care" of organic livestock require the National Organics

24   Standards Board ("NOSB") to recommend standards "for the care of" livestock to ensure it is

25   produced organically. § 6509(d)(2).

26         In January 2017, the USDA published the OLPP Rule to amend the organic certification

27   program. 82 Fed. Reg. 7042 (Jan. 19, 2017). The OLPP Rule had been in the works for more than

28

ORDER GRANTING REMAND
CASE NO. 18-cv-01763-RS

10 years, during which time the USDA consulted the NOSB, held public hearings, and had a notice-and-comment period. The purpose of the OLPP Rule was to create "greater consistency in organic livestock and poultry practice standards." *Id.* To that end, the rule standardized requirements concerning livestock access to indoor and outdoor spaces, which producers had previously applied inconsistently (in Plaintiffs' telling, exploiting loopholes). The rule also strengthened and clarified guidance to livestock producers and handlers to ensure livestock's wellbeing. *Id.* at 7057. The USDA stated that, through this new guidance, "animal wellbeing can be enhanced and consumers can be assured of the integrity of the USDA organic seal." *Id.*

### B. The Withdrawal Rule

The OLPP Rule never became law. The OLPP Rule was promulgated on January 19, 2017, the last full day of the Obama Administration, and it was scheduled to go into effect on January 20, 2017, the first day of the Trump Administration. The Trump Administration sent a memo to executive agencies, including the USDA, titled "Regulatory Freeze Pending Review." Consequently, the USDA delayed the effective date of the OLPP Rule three separate times for a total of fourteen months. Shortly after the third delay, the USDA issued a proposed rule announcing its intention to withdraw the OLPP Rule altogether. In March 2018, in what it termed a "deregulatory action under Executive Order 13771," the USDA withdrew the OLPP Rule. 83 Fed. Reg. 10,775.

The USDA gave two bases to withdraw the rule. First, it stated the reference in the OFPA to standards "for the care of" did not stretch so far as to allow any regulations about animal welfare, as the USDA characterized its previous position. Instead, "for the care of" related only to the practices discussed by Congress in the OFPA, e.g., restrictions on antibiotics and pesticides, and certain feed practices. Second, it stated two economic considerations. First, it noted there was no market failure, which it believed was necessary to promulgate the regulation under the Trump Administration's Executive Orders. Second, the USDA noted the existence of three errors in the regulatory impact analysis ("RIA") sufficient to withdraw the OLPP Rule. These errors in the economic methodology included the use of incorrect formulas, and inconsistencies in cost-benefit

United States District Court
Northern District of California

analyses.

After this action was filed, the USDA discovered that the same kinds of errors which plagued the OLPP RIA had also infected the Withdrawal Rule RIA. The USDA thus concluded both rules' RIAs were deeply flawed, and that "implementing the OLPP Rule based on such a flawed economic analysis is not in the public interest." 85 Fed. Reg. 57, 937; 57,944 (Sept. 17, 2020). That said, the USDA initially concluded no further rulemaking was necessary, so the Withdrawal Rule remains in place.

**C. Procedural History and Recent Developments**

Plaintiffs sued in March 2018, just after the Withdrawal Rule was issued, averring it violated the APA.[1] They argued that the OFPA allowed the USDA to set standards for the welfare of organic livestock; that a market failure was not required but one existed; that the USDA should not have taken cost-benefit analysis into account in any case; and that the USDA had to consult the NOSB. In June 2018, the USDA moved to dismiss the First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. The motion was denied as to lack of subject matter jurisdiction, because at least one Plaintiff had standing. The motion was granted without leave to amend as to the claim that it was improper to do cost-benefit analysis. The motion was granted with leave to amend as to whether the USDA's failure to the NOSB was arbitrary and capricious. Later, these proceedings were stayed pending the USDA review of the errors in the OLPP RIA.

During this litigation, the Trump Administration transitioned to the Biden Administration. Under the Biden Administration, the USDA stated its intention to reconsider the Withdrawal Rule, and to begin rulemaking on a new rule which incorporates the key elements of the original OLPP Rule while correcting for the previous errors. Based on the current administration's approach, the parties entered into settlement discussions, but they were unsuccessful. Plaintiffs now move for

---

[1] There is also a sister case, *Organic Trade Ass'n v. USDA*, No. 17-1875-PLF (D.D.C.). A similar set of motions is pending in that case.

ORDER GRANTING REMAND
CASE NO. 18-cv-01763-RS

1    summary judgment. The USDA moves for voluntary remand without vacatur, or in the alternative,

2    summary judgment.

3         Plaintiffs oppose remand and argue if it is granted, the Withdrawal Rule should be vacated.

4    Plaintiffs claim it is uncertain if the USDA would implement a replacement rule. Plaintiffs argue

5    any further delay in implementation of the OLPP standards is prejudicial to them, because it harms

6    the OFPA's purpose of ensuring consistent, trustworthy standards in organic products. Finally,

7    Plaintiffs note delay will allow some producers to keep exploiting inconsistencies in the law,

8    perpetuating an unlevel playing field that harms other producers.[2] On the other hand, the USDA

9    argues vacatur would lead to the flawed OLPP Rule going into immediate effect. This would

10   undermine consumer trust in the organic label. Further, while the original rule gave long lead

11   times for compliance, many companies would immediately become noncompliant, creating

12   administrative chaos and waste.

13                        **III. LEGAL STANDARD**

14        Under Ninth Circuit precedent, "[a] federal agency may request remand in order to

15   reconsider its initial action." *Cal. Cmtys. Against Toxics v. E.P.A.*, 688 F.3d 989, 992 (9th Cir.

16   2012) (citing *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). Courts

17   generally "only refuse voluntarily requested remand when the agency's request is frivolous or

18   made in bad faith." *Id.* However, courts have discretion in whether to grant remand, and some

19   courts consider "whether remand would unduly prejudice the non-moving party." *Util. Solid*

20   *Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018).

21        Vacatur is generally appropriate after remand. *Humane Soc'y of U.S. v. Locke*, 626 F.3d

22   1040, 1053 n.7 (9th Cir. 2010). However, law is unsettled on whether vacatur is permitted before a

23   final judgment on the merits. *In re Clean Water Act Rulemaking*, No. 20-04636 WHA, 2021 WL

24   4924844, at *4 (N.D. Cal. Oct. 21, 2021). In considering vacatur, courts generally weigh (1) the

25

26   [2] The American Society for the Prevention of Cruelty to Animals was granted *amicus curiae*
     status; however, its brief largely overlaps with Plaintiffs' such that it does not need separate
27   consideration.

28

United States District Court
Northern District of California

ORDER GRANTING REMAND
CASE NO. 18-cv-01763-RS

1    seriousness of the agency's errors, and (2) "the disruptive consequences of an interim change that

2    may itself be changed." *Id.* (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d

3    146, 150–51 (D.C. Cir. 1993)).

### IV. DISCUSSION

#### A. Remand

6        The USDA seeks voluntary remand for further rulemaking. The USDA has been candid

7    about its need to address multiple errors in both RIAs. The current administration has made clear it

8    favors reinstating "the core policies" of the OLPP Rule, after a new round of rulemaking.

9    Plaintiffs oppose remand and raise understandable concerns that the USDA's intentions amount to

10   "gestures toward ambiguous and uncertain promised future actions." Although there is some

11   uncertainty about the issuance and timing of a new rule, the USDA's intention to move forward

12   with rulemaking "in a matter of months" does not appear to be in bad faith. Plaintiffs do not allege

13   bad faith or frivolity. Without frivolity or bad faith, a motion to remand should generally be

14   granted. *Cal. Cmtys. Against Toxics*, 688 F.3d at 992.

15       However, the D.C. Circuit has counseled that undue prejudice to the non-moving party

16   should also be considered. *Util. Solid Waste Activities Grp.*, 901 F.3d at 436. *See also* 3 Charles H.

17   Koch, Jr., Admin. L. & Prac. § 8:31, Types of remedies in review (3d ed.) ("a court should

18   [remand] only after careful consideration of the consequences"). Here, the prejudice Plaintiffs

19   complain of is not severe enough to justify deviating from the general rule allowing remand. *Id.* In

20   fact, forcing a rule onto the public which the agency has acknowledged is unsound would

21   undermine consumers' faith in the organic label—the main prejudice Plaintiffs seek to avert. Thus,

22   the USDA's motion for voluntary remand is granted.

#### B. Vacatur Before Judgment Generally

24       The only remaining issue is whether vacatur of the Withdrawal Rule is appropriate. If this

25   case had proceeded to judgment, the answer would be straightforward: vacatur is appropriate after

judgment except in rare cases.[3] *Humane Soc'y of U.S.*, 626 F.3d at 1053 n.7. However, the law is unsettled on whether vacatur is permitted before a final judgment on the merits. *In re Clean Water Act Rulemaking*, No. 20-04636 WHA, 2021 WL 4924844, at \*4 (canvassing differing views and noting the Ninth Circuit has not ruled on this question). The USDA argues vacatur is not permissible in this situation. First, it notes the text of the APA authorizes courts to set aside agency actions when they have been "found" to violate the APA. 5 U.S.C. § 706. It also invokes cases from the D.C. Circuit and cases from this district that it believes supports its view. Reply In Support of Remand at 5 (citing *Util. Solid Waste Activities Grp.*, 901 F.3d at 436–38, and *California v. Regan*, No. 20-cv-3005-RS, 2021 WL 4221583, at \*1 (N.D. Cal. Sept. 16, 2021), among others). It is not so clear that vacatur on remand before judgment would never be permissible. Plaintiffs point to cases when it has been done—although the USDA characterize these cases as outliers.

In fact, Plaintiffs point to a recent case in which the government appears to take a contrary position by requesting voluntary remand with vacatur.[4] Plaintiffs' Notice of Supplemental Authority (citing Mot. For Voluntary Remand, *Native Am. Land Conservancy, et al. v. Haaland*, No. 5:21-cv-00496-GW-AS (C.D. Cal. 2021)). The government responds that the positions are consistent, as in the other case the agency had confessed error, while the USDA says it has not confessed error here. It is hard to square that position with the USDA's acknowledgment of serious errors in both rules. Nevertheless, this point is not dispositive; as noted already, it is simply

---

[3]  The USDA points out that Plaintiffs heavily rely on these inapplicable cases, without acknowledging this distinction to the appropriate degree. That may be true, but the USDA has also committed its own sins of omission, or more charitably, aggressive litigation stances, e.g., arguing that there is no choice but to remand without a judgment, when a recent case in this district surveyed the law and found it to be unclear.

[4] Plaintiffs did not move for approval to file this supplemental material, as required by Civil Local Rule 7-3(d). Plaintiffs styled the filing as a notice of supplemental *authority* (emphasis added). Approval is not required to file a notice of supplemental authority. However, a government brief is not authority of any kind. Also, no argument is allowed when filing supplemental authority, and Plaintiffs added an argumentative preface to their filing. Nonetheless, strict compliance is waived in this instance.

1  unclear whether vacatur can be granted at this juncture. The government's arguably inconsistent

2  positions across cases at most underscores the consequences of this confusion.

3        **C. Vacatur in this Case**

4        In any case, whether vacatur is forbidden need not be definitively decided here because

5  even if it were permitted, it is not appropriate, at least at this stage. The Ninth Circuit has adopted

6  the two-prong *Allied-Signal* test for vacatur. *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (citing

7  *Allied–Signal, Inc.*, 988 F.2d at 150–51). The decision on vacatur depends on the seriousness of

8  the order's deficiencies and the disruptive consequences of an interim change that may itself be

9  changed.

10       Here, the Withdrawal Rule does appear to have deficiencies. As both sides acknowledge,

11  there were flaws in its RIA. It seems likely at least one of Plaintiffs' arbitrary-and-capricious

12  arguments would succeed if this case proceeded to judgment. However, in the pre-judgment

13  context, these deficiencies should carry less weight. The agency has recognized at least some of

14  the deficiencies and is already addressing them. In voluntary remand cases generally, the agency

15  admits there are errors; the point of the procedure is that it is superior to have agencies fix these

16  errors through another rulemaking, rather than force inexpert courts to waste resources assessing

17  the problems, with only the record of a flawed rulemaking and a blunt, binary solution (to vacate

18  or not). *Cf. Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (a purpose of remand is

19  for "agencies to cure their own mistakes rather than wasting the courts' and the parties' resources

20  reviewing a record that both sides acknowledge to be incorrect or incomplete."). Thus,

21  deficiencies should count for less in the pre-judgment context.

22       On the other hand, if the Withdrawal Rule is vacated, the OLPP Rule would immediately

23  spring into effect. This means a rule with a similarly flawed RIA will become the law. Thus,

24  vacatur would trade one defective rule for another. Additionally, the USDA notes compliance

25  deadlines in the OLPP Rule have already passed, so regulated entities would immediately be out

26  of compliance, without the fair warning the rule was intended to have. There would be disruptive

27  consequences for companies forced to scramble into compliance with a temporary rule, and the

28

*United States District Court*
*Northern District of California*

ORDER GRANTING REMAND
CASE NO. 18-cv-01763-RS

1    USDA would likely have to waste administrative resources to mitigate the chaos—precisely the

2    harm *Allied-Signal* cautions courts to avoid.

3            Plaintiffs argue the analysis of disruptive consequences should focus on harm to the

4    environment, as that is the purpose of the statute. *Pollinator Stewardship Council v. EPA*, 806

5    F.3d 520, 532 (9th Cir. 2015). However, the OFPA's explicit purposes are all centered on creating

6    a consistent organics label that fosters consumers' trust. Seesawing back and forth between

7    different rules undermines this purpose, not furthers it. In fact, Plaintiffs acknowledge vacatur

8    would create these harms, and suggest a stay to mitigate them. Instead, it is best simply to avoid

9    the harms in the first place. Thus, the motion to remand is granted without vacatur.

## V. CONCLUSION

11           For the reasons stated above, the USDA's motion to remand without vacatur is granted.

12   The motions for summary judgment are denied as moot.[5] Because the analysis above depends in

13   part on the USDA's representations of its timeline, the parties shall file a status report within 180

14   days.

16   **IT IS SO ORDERED**.

18   Dated: March 4, 2022

20                                                           RICHARD SEEBORG
                                                             Chief United States District Judge

_____

[5] Plaintiffs assert the rule is so lawless and flawed that judgment must be pronounced on it. However, Plaintiffs are not entitled to a judgment on the rule. *See Ethyl Corp.*, 989 F.2d at 524.

United States District Court
Northern District of California